## DABBS *v*. RICHARDSON *et al.*\*

(Division B. Feb. 9, 1925. Suggestion of Error Overruled Feb. 23, 1925.)

[102 So. 769.   No. 24616.]

1. WILLS. *Finding of jury as to testamentary capacity will not be disturbed on appeal.*

Where the evidence is conflicting as to testamentary capacity, the finding of the jury thereon will not be disturbed on appeal.

2. WITNESSES. *Physician not competent to testify as to facts and information received by him in professional capacity; physician competent to testify as to knowledge concerning mental condition derived from social or business relations; trial judge may determine competency of physician's knowledge derived partly from his relation as physician and partly from social and business relations.*

Under section 3695, Code of 1906, section 6380, Hemingway's Code, a physician is not a competent witness to testify as to facts and information received by him in his capacity as a physician. He is a competent witness to testify concerning the mental condition of a person, though he is the physician of such person, if his information is derived from social or business relations and not by professional relations. But where his knowledge is derived partly from his relation as a physician and partly from social and business relations, the trial judge may determine his competency in view of all the evidence, and if it appears that his information as a physician influenced his judgment, the judge may exclude his evidence from the jury.

3. TRIAL. *Remarks of counsel in will contest as to scheme to get testator's property held not reversible error.*

A statement by counsel in argument as follows: "Gentlemen of the jury, these negroes, Peach Adams, Wesley Price, and Allen Price maneuvered this scheme to send for these white men to fix up this will to get for them this old negro's property, as they had contrived it," is not reversible error where the trial judge, on objection, directs counsel to refrain from such argument, and nothing appears to show that the jury were influenced by such remarks.

---

\*Headnotes 1. Wills, 40 Cyc., p. 1358; 2. Witnesses, 40 Cyc., pp. 2381, 2387, 2389; 3. Trial, 38 Cyc., p. 1503.

Appeal from chancery court of Monroe county.

Hon. Allen Cox, Chancellor.

Proceedings to probate the will of Ruffin Price, propounded by R. G. Dabbs, in which Amis Richardson and others filed a *caveat.* From the judgment rendered, proponents appeal. Affirmed.

*Leftwich & Tubb* and *Stovall & Stovall,* for appellants.

Where a physician is offered as a non-expert witness, having stated he could segregate his knowledge gained in professional capacity from that based on conversations as a layman and derived from social relations, is not precluded by section 6380, Hemingway's Code from testifying. *Estes* v. *McGehee, et al.,* 97 So. 530.

Section 3366, Hemingway's Code, provides. in substance, that every person of sound and disposing mind can devise property by will and that the instrument shall be signed by testator or by some other person in his or her presence, and by his or her express direction; and, moreover, if not wholly written and subscribed by himself, it shall be attested by two or more credible witnesses in the presence of the testator.

Where the testator consents to have his hand guided by another in signing his will, it is sufficient. *Watson* v. *Pipes,* 32 Miss. 451. A testator who cannot write may sign his will by his mark. *Sheehan* v. *Keemly,* 82 Miss. 688, 85 L. R. A. 102. Under the requirement, a will shall be attested by two or more witnesses in the presence of the testator, if the testator is suffering from a physical disability, but is conscious of their presence and that they sign as witnesses, the rule is satisfied. *Watson* v. *Pipes,* 32 Miss. 451; *Walker* v. *Walker,* 67 Miss. 529.

Mental capacity of the testator is to be tested as of the date of the execution of the will. *In re Luckett's Estate,* 4 How. 459; *Lum* v. *Lasch,* 93 Miss. 81, 46 So. 559; *Moore* v. *Parks,* 84 So. 230; *Rodney* v. *Batson,* 86 Am. Dec. (Del.) 826.

Periods of temporary incapacity do not raise a presumption of their existence at the time the will was executed. *Lum* v. *Lasch,* 93 Miss. 81; *Chandler* v. *Barrett,* 99 Atl. (La.) 706; *In re Murphy's Estate,* 116 Pac. (Mont.) 1004. The mental capacity of the testator to make a will is not to be determined by his condition subsequent to its execution. *Gregory* v. *Oates,* 14 S. W. (Ky.) 231; *Harris* v. *Hayden,* 54 N. W. (Mich.) 911.

To sustain an allegation of want of testamentary capacity, something more than mere physical disease and old age on the part of the testator must be shown. *Garmahan* v. *Hamilton,* 107 N. E. (Ill.) 210; *In re Hackett's Estate,* 146 N. W. (S. D.) 437; *Geizer et al.* v. *Bardwell,* 99 N. E. (Ill.) 582.

Neither old age nor feeble health nor both together constitutes mental incapacity though combined with a defective memory and mental sluggishness, nor raises any question of lack of testamentary capacity. *Geizer et al.* v. *Bardwell, supra; Posy* v. *Donaldson,* 66 So. (Ala.) 662; *Wood* v. *Carpenter,* 66 S. W. (Mo.) 172.

One has testamentary capacty if he has mind and memory sufficient to understand the business he is engaged in, to remember the property he is about to will, the object of his bounty and the manner in which he desires to dispose of it. *Council* v. *Mayhew,* 55 So. (Ala.) 314; *In re Houston's Estate,* 124 Pac. (Cal.) 852; *In re Weediman's Estate,* 98 N. E. (Ill.) 956; *Sevening* v. *Smith,* 133 N. W. (Ia.) 1081; *Brock* v. *Luckett, supra; Moore* v. *Parks, supra.*

The test of testamentary capacity is whether testator's mind was sufficiently sound to enable him to know and understand the business in which he was engaged when he executed his will, and weakness alone will not invalidate a will if there was mind and memory enough to direct the disposition of the property intelligently. *In re McNitt's Estate,* 78 Atl. (Pa.) 32; *Stevens* v. *Myers,* 121 Pac. (Ore.) 434; *Lindsley* v. *Stephens,* 129

S. W. (Mo.) 641; *In re Redfield's Estate,* 48 Pac. (Cal.)
794; *Casarotti* v. *Lyons,* 192 Pac. 1085.

The testimony of subscribing witnesses to a will is the
best evidence of its due execution and of the sanity of
the testator. *Brock* v. *Luckett, supra; Helm* v. *Sheeks,*
77 So. (Miss.) 820; *Maxwell* v. *Lake,* 88 So. (Miss.)
326; *Smith* v. *Young,* 99 So. (Miss.) 370.

Where the verdict is not sustained by the evidence,
the court will remand the cause for a new trial; and, too,
where the issue is not met by the evidence, a peremptory
instruction is proper. *Crockett* v. *Young,* 1 So. 241;
*Stackhouse* v. *Horton,* 15 N. J. Eq. 208; *In re Redfield's
Estate, supra; Moore* v. *Parks, supra.*

Where in a will contest case the subscribing witnesses
testified that testator was of sound mind, as well as to
the due execution of the will, such evidence established
a *prima-facie* case for proponents, and shifted the
burden to contestants of establishing testator's inca-
pacity. *Holton* v. *Cochran,* 105 S. W. (Mo.) 1035;
*Bottom* v. *Bottom,* 106 S. W. (Ky.) 216; *Moore* v.
*Parks, supra.*

If there be several issues submitted to the jury and
the verdict be general, not specifying on which issue it
was found, and if there be one of the issues in respect
to which the verdict is unsupported by the evidence and
the verdict might have been on that issue, it will be set
aside, if in respect to that issue there was an erroneous
charge to the jury. *Gay* v. *Lerule,* 32 Miss. 309.

Mr. Justice LAMM of the supreme court of Missouri
in *Toomer* v. *Anderson,* 130 S. W. 185, in his inimitable
way condemns the growing tendency of courts' juries
to set aside last will and testaments and to substitute in
lieu thereof their own notions as to what a testator
should do with his own property, he said: "A testator
in writing his will need not write it as a supplication to
the jury, viz: 'I wish my property to go to so and so,
and hope that a jury will think upon the subject as I do
and confirm my act.' " Our own court in *King* v. *Rowan,*

34 So. 327, quoting with approval *McDevitt's case,* 30
Pac. (Cal.) 101, said: "The right to dispose of one's
property by will is most solemnly assured by the law,
and it is a most valuable incident to ownership, and
does not depend upon its judicial use. The beneficiaries
of a will are as much entitled to protection as any other
property owners; and courts abdicate their function
when they permit the prejudices of a jury to set aside
a will merely upon suspicion, or because it does not
conform to their ideas of what is right and proper."

Appellants complain of the ruling of the trial court
after admitting the testimony of Dr. Dabbs, the attend-
ing physician of testator, as to his mental condition at
the time of executing the will and later excluding said
testimony from the consideration of the jury. After Dr.
Dabbs had stated he could separate his opinion gained
of Ruffin Price in a business and social way from that
gained in a professional way, the ruling of the trial
court was prejudicial error.

Dr. Dabbs was offered as a non-expert witness and was
so cautioned by appellants that only his opinion as a
layman was wanted and in that capacity he testified.

Assignment of error numbers two and seven com-
plains of the action of the trial court in failing to
instruct the jury to disregard the argument of counsel
for contestants as shown by special bill of exceptions
and, also, in giving instruction number ten for contest-
ants. By counsel's argument for contestants, the jury
was led to believe, and, with the sanction of the court
since they were not advised otherwise, that the pro-
ponents of the will and Dr. Dabbs, the executor, who was
present at its execution, and Mr. DeFord and Mr.
Springer, who attested the will, confederated together
to unlawfully get testator's property. The jury had
been instructed to find for the proponents on the issue
of undue influence. The peremptory instruction to the
jury that there was no evidence of undue influence be-
came a nullity when contestant's counsel were permitted

to make the foregoing arguments without its effect being corrected. This error of the trial court became emphasized by instruction number ten for contestants and which is excepted to in assignment of error number seven of appellants. In said instruction, the court charged the jury "that it was their duty to consider all the facts and circumstances in the case as shown by the evidence, the charges of the court and the argument of counsel, etc." Surely it will not be contended for a moment that the argument of counsel in a case is of probative value. But this instruction leads the jury to believe that what contestants' counsel says, even outside the record, is to be considered by them in determining their verdict.

The Michigan court in *Rickhaus* v. *Galtz,* 16 N. W. 384, said: "The duty of the trial judge to repress needless scandal and gratuitous attacks on character is a very plain one and good care should be taken to discharge it fully and faithfully. . . . whatever may be the abstract justice of proponents' case—a point we are not dealing with—the fact is patent that the trial was unfair," and accordingly the case was remanded.

Assignment of errors numbers three and four raise the question whether the will was properly signed and executed by Ruffin Price and properly attested in accordance with our statutes.

Assignment of error number five challenges the action of the trial court in refusing to instruct the jury that on the issue of the soundness of mind of the testator they must find for the proponents. All the evidence shows that Ruffin Price was a negro between seventy and eighty years of age; that he had been blind for nearly two years and his eyes being treated by Dr. Lilly of Tupelo, Mississippi, and that Dr. Dabbs, his physician, testified on cross-examination by contestants' counsel that he was suffering at this particular time from heart trouble. The record shows indisputably and without contradiction or qualification that in January, 1923,

Ruffin Price told Armistead Fields that he intended to leave his property to Allen Price, Wesley Price, Peach Adams and Ida Wagner, who are the present beneficiaries under the will offered for probate, and there is no evidence in the record that questions his mental capacity to make a will at that time.

In the case of *Brock* v. *Luckett's Ex'rs., supra,* this court said: "The testimony of the subscribing witnesses is entitled to greater weight than the testimony of those who had no such duty to perform. It is the best evidence of its due execution and of the sanity of the testator and is especially entitled to greater weight than the testimony of witnesses who are not present at the time the will was executed." This doctrine has been approved by the recent decisions of this court in, *Gillis* v. *Smith,* 114 Miss. 665, 75 So. 451; *Helm* v. *Sheeks, et al., supra; Smith* v. *Young, supra.*

This court has often held that mental capacity of the testator is to be taken as of the date of the execution of the will. *Scally* v. *Wardlaw,* 86 So. 625, and cases cited. The case of *Wood* v. *Carpenter, supra,* is an instructive case upon the question of mental capacity. In that opinion, the court said: "Evidences of physical infirmity and lapses of memory are insufficient to show want of mental capacity at the time of the execution of the will so as to sustain a judgment voiding the will."

In the case of *Geiger et al.* v. *Bardwell, supra,* six witnesses expressed the opinion that the testator was of unsound mind "because he failed to recognize acquaintance made several years previous to certain dates; that he refused to transact certain business, but referred it to his lawyer; that he suffered with eczema; that he did not want to talk; was nervous and forgetful; would start to answer when asked questions and say he forgot and seemed a man all broken down to what he used to be; that he was feeble and childish." Yet, there were numbers of neighbors and acquaintances of the testator who testified to his mental soundness. A certain lawyer,

by the name of Palmer, who was acting as an appraiser for a right of way for a railroad company, had several talks with Geiger, the testator, before and after the execution of the will and he stated that he talked as well before as after its execution, and, also, testified to his mental soundness. The court held that "neither old age nor feeble health constitute mental incapacity nor both together though combined with defective memory and mental sluggishness."

The above cases are parallel to the case at bar in showing the physical condition and peculiarities of the testator and their import is a matter of law. In both of these cases, the juries' verdict setting aside the will for lack of testamentary capacity was reversed and remanded. The case of *Cassorotti* v. *Lyons, supra,* is in every detail like the case at bar and counsel most respectfully solicits the court's examination of that case. For the court's information and convenience, a photographic copy of this case is included in this brief.

If it can be said that testator was suffering from mental delusions by talking of his eyes a great deal and suspecting children to be singing on the porch at night and, though blind, asking for a neighbor who was not in the room, we refer to the case of *Redfield's Estate, supra,* which is very instructive on this point. The court said: "Delusions which are not operative in a testamentary act—do not relate to the persons or objects affected by it—are not permitted to invalidate it. The delusions of the testatrix had no relation to any person or object affected by the will. All the facts together fall short of showing that she was under any delusions respecting her relation with her mother or other kindred or respecting her property or the distribution of it provided by the will."

The justice of the rule as to what constitutes testamentary capacity announced by this court in the recent case of *Moor* v. *Parks, supra,* is fortified by the facts of the case at bar. It is respectfully submitted that the

court below erred in not granting the peremptory instruction requested by proponents on the issue of testamentary capacity.

Assignment of error number six complains of the action of the trial court in granting charge number three for the contestants. This charge instructed the jury that the contestants in the case were Annis Richardson, Sulu Simmons and others named in the *caveat.* The *caveat* contained the name of Ida Wagner, who is a beneficiary under the will. The proponents objected in their answer to the *caveat* to Ida Wagner, being a contestant, which objection was sustained.

The case of *Biles* v. *Dean,* 14 So. 536, holds that one who takes more under a will than he would as heir is not a person interested within the meaning of the statute authorizing the contestant. If she takes more under the will than she does without it, she cannot contest its validity.

The case should be reversed and because of the trial court's refusal to give the peremptory instructions requested, a decree rendered here declaring the instrument in controversy to be the last will and testament.

*Paine & Paine,* for appellees.

There were six negro witnesses and three white witnesses for the appellants and eight negro witnesses for the appellees. This case is, therefore, an appeal from a verdict of the jury on conflicting facts, upon which verdict the chancellor permitted the decree to be entered against the validity of the will. Accordingly we invoke the rule of law as recently announced by Judge ANDERSON in the case of *Cox et al.* v. *Tucker,* 133 Miss. 385.

None of those mentioned as devisees under this alleged will were kin or related to Ruffin Price, the alleged testator, except Ida Wagner. And we call the court's attention to the fact that the record shows that Ida Wagner was living with the decedent but that she de-

clined to take under this alleged will and joined in the
contest of this alleged will, and this is true, regardless
of the fact that under the alleged will, Ida Wagner
would have received more than she would when the will
is set aside. The contestants and appellees are the next
of kin and would inherit the property in the event the
will was invalid as held by the lower court and jury.
The record shows that Ruffin Price was on friendly
relations with all the appellees, that they visited him
and cared for him. The appellees offered Ida Wagner
as a witness in the lower court to prove by her that
Ruffin Price was not mentally capacitated to execute the
alleged will, but the appellants objected to her testifying
and the court declined to permit this testimony to go to
the jury.

The testimony shows that this old negro, Ruffin Price,
was between seventy-six and eighty years of age. That
he was bed-ridden and blind and in the article of death
at the time this alleged will was prepared.

There was no error committed by the chancellor in
instructing the jury not to consider the testimony of
Dr. Dabbs as to the mentality of Ruffin Price at the time
of the writing of the alleged will. The court at first
permitted the doctor to testify, recognizing the law in
this state that a doctor could express an opinion if he
was able to segregate in his own mind the information
which he had obtained socially from that information
obtained under the relation of doctor and patient. But
after the court heard the other witnesses for the appel-
lants and their various material contradictions and
several of the witnesses for the appellees he properly
excluded it from the jury. In other words, the doctor
failed to qualify himself on this point to the satisfac-
tion of the chancellor, so as to make his opinion com-
petent.

We submit that before Dabbs could testify as to the
mentality of Ruffin he must have had an opinion based
on social intercourse and must have been able to

segregate or distinguish the social opinion from the professional. In other words he must have qualified himself to the satisfaction of the chancellor that he was able to segregate in his own mind that which he had learned as the doctor of the old negro from the knowledge he had acquired from his social intercourse with him. This he did not do to the satisfaction of the chancellor, and hence the ruling of the court was not error under the case of *Estes* v. *McGehee,* 133 Miss. 184.

In the case of *U. S. Fidelity & Guaranty Co.* v. *Hood,* 124 Miss. 548, this court through Judge ETHRIDGE said: "In such a case the question ought to be directed to ascertaining whether the physician has knowledge by reason of the relation of a physician and patient, and if it was so acquired, it ought to be excluded."

The case being in equity and tried to a jury, whose verdict is simply advisory it is the right of the chancellor to consider all the testimony and if in his opinion from the testimony, the doctor cannot and has not shown that he is able to segregate the professional knowledge and the social knowledge or if the court be of the opinion that the doctor is falsifying in either event he has the inherent right to exclude this testimony from the jury. If there was error in the remarks of counsel, the court's remarks to counsel at that time corrected the error. *Railroad Co.* v. *Reeves,* 93 Miss. 557-565; *Pullman Palace Car Co.* v. *Lawrence,* 74 Miss. 782-809.

Appellants argue with reference to the charges granted appellees that the burden of proof as to testamentary capacity shifts from the proponents to the contestants, under certain circumstances. But our court has held that the burden of proof is upon the proponents throughout on the issue of testamentary capacity. *Sheehan* v. *Kearney,* 82 Miss. 699; *Gathings* v. *Howard,* 122 Miss. 376; *Hitt* v. *Terry,* 92 Miss. 671. Appellants contend the court should have given them a peremptory instruction on the issue of the legal execution of the will.

The appellants had four witnesses who signed the will as witnesses. It is beyond doubt that the two negro witnesses were not in the room when it is charged that Ruffin made his mark to the will, as two of the appellants' own witnesses admit this and several witnesses for the appellees state this to be a fact. It is also admitted by several of the appellants' witnesses and testified to by at least one witness for appellants that after these two negro witnesses came into the room that Ruffin did not state in their presence that it was his will nor did he ask them to sign as witnesses. Our court has held in a number of cases that the word "attest" in the statute means more than the mere signing of the name to a will by the so-called witnesses. Our court has, also, held that it is not essential to a valid attestation of the testator's signature that the subscribing witnesses shall see the testator sign the will or make his mark to it. But if they do not see him sign it or make his mark to it, then our courts have held that it is necessary that the testator shall produce the will and declare it to be his will and state that the signature appended to the will is his signature or mark and that he wrote it or had his mark made. In other words as to these two negro witnesses who came into Ruffin's room after his name was signed by mark, it was necessary that Ruffin publish the will or declare the instrument to be his will; or upon his failure to do so, there was not a legal attestation of the will by these negro witnesses. *Miller* v. *Miller*, 96 Miss. 526; *Maxwell* v. *Lake*, 127 Miss. 115. We quote one sentence from this latter case, as follows: "We think that it is the law that the witnesses should see the testator sign the instrument, or that he should declare the signature to the instrument to be his signature." At least one witness for the appellees testified that after these two negroes came into the room, Ruffin Price never uttered a word.

Right and justice was done in the case; a white jury of Monroe County, Mississippi, after hearing the evidence and observing the witnesses on the stand, preferred to believe the testimony of the negro witnesses for the appellees rather than that of the white witnesses for appellants.

The case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

This suit grows out of a will contest. The appellants presented the alleged will of Ruffin Price in which the property of the decedent was said to have been devised and bequeathed to Ida Wagner, Allen Price, Peach Adams, and Wesley Price. The said instrument reads as follows:

"I hereby bequeath to the following as outlined below: To my niece Ida Wagner I bequeath my home place which contains about twenty acres. The rest of my real estate I want to be divided equally between Wesley Price, Allen Price, Peach Adams.

"All of my personal property and personal effects I want to be divided equally between the aforesaid Ida Wagner, Wesley Price, Allen Price, and Peach Adams.

"I hereby appoint Dr. R. G. Dabbs as executor of my estate.

"Witness my hand this the 12th day of June, 1923.

his<br>"[Signed] RUFFIN    X   PRICE.<br>mark

"Witnesses:

  "[Signed] J. P. DE FORD,

        "J. D. SPRINGER."

"We, the undersigned witnesses hereby make oath that the foregoing instrument was signed in our presence, and same was written up at his request, and no pressure was brought to bear in any way, and that the testator was of sound mind to the best of our knowledge and belief.

137 Miss.—51.

"Witness our signatures this the 12th day of June, 1923.

"[Signed]　J. W. FIELDS.

"BRAG JACKSON."

A *caveat* was filed by the appellee after the will was presented and probated by the clerk, and an issue was made up by the chancellor, as follows:

First: As to whether or not the alleged will or the execution thereon was procured by undue influence wrongfully exerted.

Second. As to whether or not at the time of the execution of the said alleged will the said Ruffin Price was of sound and disposing mind and memory, and capable of making a last will and testament.

Third. As to whether or not the paper propounded as the alleged will of Ruffin Price was and is in fact and law the true and genuine last will and testament of said Ruffin Price, deceased.

The proponents introduced the witnesses to the alleged will and others, including Dr. R. G. Dabbs, the executor, to prove the execution of the will and the capacity of the deceased to make a will, and the witnesses for the proponents testified that the will was prepared by them for the deceased, read over to him, approved by him, and that he touched the pen, signing by mark. They testified that the deceased was blind, and that he was an aged negro man, and had been sick for some weeks; that on the morning of the day the will was executed in the afternoon they were sent for to go to the residence of the deceased, Ruffin Price, and prepare the will, and that when they reached the place there was a large crowd of negroes present: that they went in and spoke to Ruffin Price, the deceased, and told him they had come at his request to prepare his will, and asked him if he desired the negroes assembled in his room to remain and hear the will made and read to him and he said no; that he desired the crowd of negroes in his room to go out. The draftsman of the

will was Mr. De Ford; he procured the paper, pen, etc., and asked the deceased as to the disposition of his property; that Ruffin Price first stated that he desired Ida Wagner to have the home place and twenty acres of land; that he desired Wesley Price, Allen Price, and Peach Adams each to have twenty acres of his land; that this was written down, and he was then asked what else, and he said he wanted his plows and other personal property to be equally divided between each of the four named persons mentioned; that this was written down and he was asked what else, and he said he had some money in the Bank of Shannon but he did not want to divide that as he would need that to live on; and this was not written in the will; that he was then asked what else, and he said he would need an administrator and stated he wanted Dr. Dabbs to be his administrator, and a provision was written in the will appointing him as executor of his estate; that the will was then read over to Ruffin Price, the deceased, and approved by him, and the draftsman, Mr. De Ford, took his hand and asked him to touch the pen and make a cross-mark between his given name and surname. The will was witnessed by J. P. De Ford and J. D. Springer, two white men. It was then suggested that it would look better to have some negroes to witness the will, and then J. W. Fields and Brag Jackson were called in, and they signed as appears on the will.

When Dr. Dabbs was offered as a witness the testimony was objected to, which objection was overruled, and he was examined with reference thereto. Dr. Dabbs testified that he was a practicing physician; that he waited upon the deceased as his physician during the last days of his illness; that he went down there the day the will was written; that he was sent for by Wesley Price, and left home about twelve-thirty p. m., and went with Mr. De Ford and Mr. Springer; that they went about half way in a car and the balance of the way in a wagon with Wesley Price and Peach Adams; that

they found Ruffin Price a sick man, and the house was full of negroes. That they said to Ruffin, "We are here; what did you want with us?" He says:

"Doctor, I decided to make my will, and I want you to write my will for me, I says, 'All right;' and there was several colored people in the house. I says, 'You want all these people to stay in the house while this is going on,' and he says, 'No; I want them to go out.' I asked them to go out and I closed the door."

The doctor then was asked with reference to the making of the will, and made statements in substance as above set out. That he saw Ruffin Price sign the will and saw the other witnesses sign it. That he was the one who suggested that two colored men be brought in to witness the will. That the deceased recognized their voices. The doctor was then asked with reference to the deceased's acts and habits compared on that occasion with his acts and habits of previous years, as he had known him in a business way, not as he had known him in a professional way, but in a social way. Objected to; overruled; exception. To which the doctor replied, "Seemed to be all right, couldn't tell any difference." He stated that he had treated Ruffin Price, the deceased, professionally, and that sometimes he would see Ruffin Price over at Shannon in his lifetime; that he saw him often and talked with him. Dr. Dabbs stated that he could separate his opinion of this old negro gained in a business and social way from that gained in a professional way. That his acts and habits on the day in question when the will was written were similar to those on former days when he knew him in a business and social way. Dr. Dabbs further stated that he did not carry his medicine case on this occasion, but that he carried his stethoscope; that deceased had a leakage of the heart; "that he raised up in bed and I was through with him." That he did this act as a physician. That he did not charge for this visit as a doctor, but that he did charge the estate of Ruffin Price after the old negro's death

two dollars and fifty cents for making this trip to his residence on the day the will was written, and probated his account therefor.

The witnesses for the contestants testified that Ruffin Price had been ill for some weeks, that he was very old, and that he had no mind with which to transact business. One witness who sat up with him the night before his death testified that Ruffin Price did not have any intelligent idea about anything; that he would just answer, "Uh, huh," when he was asked anything. That the old man asked what children were singing on the gallery, when in fact there was no one singing there; that he was very feeble. Another witness visited him on the morning before he died that night, and sat with him until a few minutes before the white men came to Ruffin Price's house to write his will. This witness stated that the old man, Ruffin Price, did not have any mind and he thought he was dying at that time; that the witness went home to do some errands and came back to Ruffin's house about seven o'clock that night, and stayed until the old man died at about nine o'clock that night. Another witness testified that he was present during the writing of the will; that these white men writing the will would suggest to Ruffin Price what he wanted done and that he would answer, "Uh, huh." This witness also said that Ruffin Price had the appearance of being a dying man, and that he thought death was upon him then. There were some six or seven witnesses who testified along this line, there being a fairly even number of witnesses for the proponents and the contestants. After admitting Dr. Dabbs' testimony the court, before the trial ended, excluded that part of Dr. Dabbs' testimony pertaining to the mental condition of the decedent, but left his testimony with reference to all other facts and circumstances remain in evidence. The court in ruling made the following statement:

"I have, since yesterday, spent considerable thought about this matter, and I now hereby instruct you gentle-

men that in considering the testimony in this case of Dr. Dabbs you will exclude from your consideration of this case the, testimony of Dr. Dabbs relative to the mental condition of this man at the time he was there and wrote this will; this is not intended to cover anything other than his testimony relative to his mental condition, and you will not consider the testimony touching his mental condition.''

To which the proponents excepted. During the argument the attorney for the contestants addressing the jury, said:

''Gentlemen of the Jury, these negroes, Peach Adams, Wesley Price, and Allen Price maneuvered this scheme to send for these white men to fix up this will to get for them this old negro's property, as they had contrived it.''

To which the proponents objected as infringing upon the issue of undue influence, upon which issue the court had instructed the jury to find for the proponents. Whereupon the court directed counsel to refrain from such argument.

On the facts we think the evidence was conflicting, and that it was the jury's province, by their verdict, to say which side the jury believed was telling the truth. As to the testimony of Dr. Dabbs, excluded, as to the mental condition of Ruffin Price, we think that under the facts of this case, necessarily a part of the witness' knowledge of the decedent's mental condition was obtained by his visit to and treatment of the deceased during the days of his last illness.

Where there is a clear distinction between knowledge derived in a business and social way and knowledge derived in a professional way, the testimony of a physician is competent so far as it is gained from his business and social relation with the person whose sanity is the subject of inquiry. However, where a physician is attending a patient constantly, and dealing with him in a professional capacity, during which

and by which he must necessarily acquire information as to what his mental *status* is, it is within the discretion of the trial judge who has the opportunity to judge of the witness and observe him while he is testifying and during the course of examination to say whether a witness can in fact separate his knowledge acquired in business and in a social way from his knowledge acquired professionally. The witness is not the final and conclusive judge as to whether he can and does separate knowledge acquired professionally or in a business or social way or both.

It is apparent from the whole examination that most of the knowledge of the deceased's condition was derived from association during the doctor's professional visits, and naturally, a physician would note more attentively during the period of professional treatment the acts and conduct of his patient. Of course there is much that can be observed in business and social intercourse bearing on a person's sanity and the fact that such observations are made by a physician does not disqualify him, provided that his knowledge is not obtained during professional employment. The lines in many cases will be exceedingly difficult to draw, and we are satisfied in the case before us that the Chancellor noted attentively the evidence and observed the parties during the course of the trial, and we are unable to say that he erred in excluding this part of the doctor's testimony.

We do not think the remarks of counsel during the argument above set forth constitute reversible error when the court directed him to desist, and there is nothing to show that the admonitions of the court were not complied with, nor that the jury were improperly influenced thereby. It is to be presumed that the jury understood that the trial court disapproved of the argument, and that the jury would not let such argument operate in opposition to the ruling of the court.

The judgment will therefore be affirmed.

*Affirmed.*