Josephine A. ST. CLAIR, as Executrix of
the Estate of Harold W. St. Clair,
deceased, Plaintiff-Appellant,

v.

EASTERN AIR LINES, INC., Defendant-
Appellee.

No. 273, Docket 25565.

United States Court of Appeals
Second Circuit.

Argued April 5, 1960.

Decided June 2, 1960.

See also, D.C., 21 F.R.D. 330.

David A. Ticktin, New York City (Powers, Kaplan & Berger, New York City, on the brief), for plaintiff-appellant.

John G. Reilly, New York City (Robert F. Ewald and Bigham, Englar, Jones & Houston, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and HINCKS and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

Josephine St. Clair, widow of Harold St. Clair and executrix of his estate, appeals from a jury verdict in her favor in an action for damages for the wrongful death of Mr. St. Clair, allegedly caused by the negligence of Eastern Air Lines. The plaintiff's decedent was killed on November 1, 1949, when an Eastern Air Lines DC-4 in which he was a passenger collided in mid-air with a Bolivian plane as the DC-4 approached Washington National Airport for a landing. Eastern's liability under the law of the District of Columbia for the decedent's death was established in a suit brought by the estate of another passenger killed in the same accident, by which determination the parties agreed to be bound.[1] The sole matter at issue in this litigation was therefore the amount of the damages to be awarded the appellant under the District of Columbia Wrongful Death Act, D.C.Code § 16–1201, which permits recovery only for funeral expenses and the pecuniary loss suffered by the spouse and next of kin. The plaintiff sought damages of $350,000 and the jury returned a verdict for $24,000, of which $15,000 was allocated to the plaintiff and the balance to decedent's minor child by an earlier marriage.

Plaintiff assigns numerous errors in the admission of evidence and in the trial court's charge to the jury and asserts also that the verdict should be set aside as grossly inadequate. Because we conclude that the trial court was in error in admitting considerable testimony irrelevant to the decedent's prospective earning ability, and the plaintiff's consequent pecuniary loss, and that this evidence may well have influenced the jury's verdict, we reverse the judgment and remand the case for a new trial.

At the trial defense counsel cross-examined the plaintiff at length concerning the circumstances of the initial acquaintanceship between the plain-

1. See Union Trust Co. of District of Columbia v. United States, D.C.D.C.1953, 113 F.Supp. 80, modified Eastern Air Lines, Inc. v. Union Trust Co., 95 U.S. App.D.C. 189, 221 F.2d 62, defendant's appeal affirmed 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 796, plaintiffs' appeal certiorari denied 1955, 350 U.S. 911, 76 S. Ct. 192, 100 L.Ed. 799; Eastern Air Lines, Inc. v. Union Trust Co., 95 U.S. App.D.C. 189, 221 F.2d 62, reversed 1955, 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 796, modified and remanded on rehearing 350 U.S. 962, 76 S.Ct. 429, 100 L.Ed. 835, on remand 1956, 99 U.S.App.D.C. 205, 239 F.2d 25, certiorari denied 1957, 353 U.S. 942, 77 S.Ct. 816, 1 L.Ed.2d 760.

tiff and her deceased husband, plaintiff's knowledge at the time she began seeing him that he was then married to another woman, her familiarity with the progress of the divorce suit brought by his prior wife, and whether the decedent had been living at the plaintiff's apartment prior to their marriage. This testimony was admitted by the trial court, over the objections of plaintiff's counsel, on the theory that it was evidence of decedent's character and that his personal qualities and habits were proper considerations in determining his business capacity, the amount of support that he would contribute to his family, and the likelihood of his financial advancement. We think that the testimony was irrelevant to the question of the pecuniary loss suffered by the plaintiff and by the decedent's child and should not have been admitted.

Undoubtedly personal habits and qualities are to some degree relevant considerations in determining an individual's earning ability and the support that his family would have received from him but for his death. Thus, courts have held in wrongful death actions under statutes similar to that of the District of Columbia that it was proper to show that a decedent had been undergoing treatment for mental illness immediately before his death, Eder v. Cashin, 1953, 281 App.Div 456, 120 N.Y.S.2d 165, or that he engaged in greatly excessive drinking, McIlwaine v. Metropolitan Street Railway Co., 1902, 74 App.Div. 496, 497, 77 N.Y.S. 426. Such evidence is relevant because the trier of fact may reasonably think that these traits affect the individual's ability to keep and maintain employment; it also bears on the likelihood that his funds will be used for the benefit of his family rather than be expended in other ways. For the same reason, it would probably be appropriate, for example, to receive evidence that a deceased had a reputation among his business associates or employers for dishonesty or irresponsibility. See Annotation, 163 A.L.R. 258.

That some aspects of a decedent's character may properly be shown in determining the damages to be awarded in a wrongful death action does not mean, however, that all his habits and qualities are relevant. See, e. g., Lipscomb v. Houston & T. C. R. Co., 1901, 95 Tex. 5, 10, 64 S.W. 923, 927, 55 L.R.A. 869. The defendant should not be permitted to put in evidence anything he may unearth which reflects unfavorably upon the decedent. Except as they may show a propensity of the decedent to spend his income in ways which do not inure to the benefit of his family, the details of his personal life are not in issue and, in the present case, the history of St. Clair's relationship with the plaintiff bore no relation to any matter which was in issue. The manner in which men choose to conduct their personal lives very often has little bearing on the way that they manage their business affairs. In the absence of some preliminary showing to the contrary, a court ought not to suppose that evidence of the former is of utility in determining the latter. Moreover, in the case before us, any remote evidentiary value that the details of the decedent's personal life may have had was far outweighed by the certainty that prejudice to the plaintiff's case in the minds of the jurors would result from the introduction of evidence showing in an ill light not only the decedent but the plaintiff as well.

Plaintiff also urges that it was error for the trial court to permit appellee's counsel to read to the jury certain extracts from the deposition of one Stoller. Stoller had been a business associate of the decedent. In his deposition on direct examination by the appellee he testified repeatedly and unequivocally that he never had seen the decedent drinking on the job or indeed under the influence of alcohol in 1949. On cross-examination by Mr. Clark, an assistant United States Attorney, in behalf of the United States which was then a party to the action, Stoller admitted that he recalled having been interviewed by one Brady of the Federal Bureau of Investigation. But when repeatedly asked if he had not told Brady that on busi-

ness occasions he had seen the decedent when unable to sign checks because of his alcoholic condition and that the decedent had left his employment because he may have been an alcoholic, the witness consistently denied having made such statements to Brady. Thus the deposition laid a preliminary foundation for a contradiction of Stoller's deposition testimony, if that should be offered at trial, by calling Brady at the trial to testify to the inconsistent out-of-court statements which Stoller on deposition had been confronted with and had denied.

At the trial the appellant read portions of Stoller's examination on deposition by counsel then representing the defendant and by Clark. Appellee's trial counsel was then allowed over objection to read into the record in the presence of the jury portions of Stoller's deposition containing Clark's questions purportedly reciting these inconsistent statements given to Brady. By this indirect technique, counsel succeeded in putting before the jury subject-matter of questions, prejudicial to the plaintiff's case, the only legitimate purpose of which was to lay the foundation for contradiction by Brady. But counsel never called Brady nor was there put into the trial record a shred of evidence to show that the deponent Stoller had ever made out-of-court statements inconsistent with his deposition testimony.

It is unfortunate that the trial judge, when appellee's counsel sought to read to the jury Clark's questions, failed to inquire, as he doubtless would have done if requested by appellant's counsel, whether he (appellee's counsel) intended to proffer Brady as an impeaching witness. Upon a negative answer to such an inquiry, it would have been clearly erroneous to permit the reading of Clark's deposition questions. People v. Sanders, 357 Ill. 610, 192 N.E. 697, 702; Horton v. Mozin, 341 Ill.App. 66, 92 N.E. 2d 671. Cf. Kesten v. Forbes, 273 App.

Div. 646, 78 N.Y.S.2d 769. Miller v. Henderson, 41 N.J.Super. 15, 124 A.2d 23, is not to the contrary. It was there held that *on trial* a party was entitled to cross-examine a witness as to an out-of-court statement notwithstanding counsel's refusal to represent that in the event the witness denied making the statement competent proof thereof would be offered. The situation was such that counsel could hope to develop answers by the witness or demeanor conduct likely to have an impeaching effect. But in this case that objective was served not at all by reading *from the deposition* Clark's questions and Stoller's answers: it was plain that the questions were harmful in their content to the plaintiff's case and that the answers given, without Brady's testimony in contradiction of the deponent, had not the slightest tendency to impeach.

It would, of course, have been improper for appellee's counsel to have read the questions for the purpose of putting their prejudicial content before the jury with no intent to make use of the foundation thus laid by calling Brady. 98 C.J. S. Witnesses §§ 594, 597. But on this record such misconduct may not be attributed to counsel: for aught that appears, counsel at that stage of the trial may have intended to offer Brady. Nevertheless, it is plain that the content of the questions was prejudicial. It was error to permit them to be read without assurance that they were needed as necessary foundation for contradicting testimony by Brady. Philadelphia & R. Ry. Co. v. Bartsch, 3 Cir., 9 F.2d 858, 861.

■ Nor was the resulting harm cured by the charge. The judge not only refused to charge that a witness's prior inconsistent statement was not to be considered as substantial evidence of the facts stated therein,[2] but he told the jury that whether or not Stoller had made an inconsistent statement to an F.B.I. agent

2. Winchester & Partridge Mfg. Co. v. Creary, 116 U.S. 161, 6 S.Ct. 369, 29 L. Ed. 591; National Labor Relations Board v. Quest-Shon Mark Brassiere Co., Inc.,

2 Cir., 185 F.2d 285; People v. Ferraro, 293 N.Y. 51, 55 N.E.2d 861; Roge v. Valentine, 280 N.Y. 268, 20 N.E.2d 751.

"is entirely up to you and within your sole and exclusive province." This was erroneous. If, as indeed the judge told the jury, there was no evidence of an inconsistent statement, surely it was not for the jury to find that one had been made. And the error of such an instruction was not cured by the judge's accompanying observation that the failure to produce the F.B.I. agent was important for its corroborating effect in lending credibility to Stoller's denial of an inconsistent statement. This, doubtless, was somewhat helpful to the plaintiff's case. But only an instruction to take Stoller's deposition testimony as wholly uncontradicted would have sufficed. Cf. Behrman v. Sims, 81 U.S.App.D.C. 303, 157 F.2d 862.

We conclude that the error in permitting the reading of Clark's questions, and in the related charge and the refusal to charge, were in themselves sufficiently prejudicial to require reversal. Because of these errors and those discussed earlier, the case is

Reversed and remanded.