EMPIRE METAL CORPORATION and William Richard Johnson, Appellants,

v.

Robert E. WOHLWENDER, Ancillary Adm'r, etc., Appellee.

Court of Appeals of Kentucky.

Oct. 10, 1969.

Robert E. Ruberg, O'Hara, Ruberg & Cetrulo, Covington, Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, for appellants.

G. Wayne Bridges, Bridges & Nelson, Covington, Thomas C. Foster, Cincinnati, Ohio, for appellee.

PALMORE, Judge.

Mary Lou Parsons, age 27, and her son, Bradley Parsons, age 2, passengers in an automobile being driven by Larry Lee Noel, were killed in a collision with a tractor-trailer unit owned by Empire Metal Corporation (hereinafter Empire) and driven by its employe, William Richard Johnson. The accident occurred in Kenton County, Kentucky, on April 26, 1966. Robert E. Wohlwender, as ancillary administrator of both estates, brought this wrongful death action (KRS 411.130) against Empire, Johnson, and the personal representative of Noel (who also was killed in the accident), and obtained a

judgment against Empire and Johnson from which they appeal.

Appellants contend the trial court erred to their prejudice in excluding certain evidence and in denying them a trial by jury.

The evidence in question, which the trial court heard by way of avowal, would have established that at the time of their deaths Mary Lou and Larry Lee Noel were living together, with her child, as man and wife, though she was legally married to Robert Dale Parsons; that on June 2, 1966, a court in Virginia entered a judgment purporting to grant Robert Dale Parsons an absolute divorce from Mary Lou, in which judgment (which, of course, being rendered after Mary Lou's death, was utterly void) it was recited that the parties had been separated without cohabitation since August of 1960 and that no children had been born to their marriage; that in 1964 Robert Dale Parsons had been convicted of a felony; and that Robert Dale Parsons did not support Mary Lou or the child.

■ Most wrongful death statutes provide that damages are to be assessed in accordance with the loss to the surviving beneficiaries. Speiser, Recovery for Wrongful Death, § 3.1, pp. 56–58 (1966). Ours is one of the so-called "true" wrongful death statutes which have been construed to measure damages by loss to the decedent's estate, although the damages, once recovered, are distributed directly to the statutory beneficiaries. Id., § 3.2, pp. 65–66; KRS 411.130.

■ Counsel for both sides recognize that this court has consistently held the measure of damages to be the destruction of the decedent's power to earn money. Cf. Spangler's Adm'r v. City of Middlesboro, 301 Ky. 237, 191 S.W.2d 414, 415 (1945). Contending, however, that our precedents in this respect are cases in which the deceased was under a duty of supporting the ultimate beneficiary or bene-

ficiaries of the judgment, appellants argue that they ought to be able to show that Robert Dale Parsons, the surviving husband, actually suffered no pecuniary loss, and that the relationship between him and the wife and child is a circumstance pertinent to that issue.

It seems to us that the statute itself furnishes the answer to this contention, in that it does not provide for any scaling of the recovery on the basis of who the beneficiaries are or what their states of actual or legal dependency, if any, happen to be. For example, if there is no surviving spouse, child or parent, "then the whole of the recovery shall become a part of the personal estate of the deceased, and after the payment of his debts the remainder, if any, shall pass to his kindred more remote than those above named, according to the law of descent and distribution." KRS 411.-130(e). See Napier's Adm'r v. Napier's Adm'r, 210 Ky. 163, 275 S.W. 379 (1925).

In Freeman v. Oliver M. Elam, Jr. Company, Ky., 372 S.W.2d 796, 798 (1963), holding that the identity of the beneficiaries is "not material to the issues," it was pointed out that identifying the beneficiaries as the decedent's seven children "would have had no effect except possible prejudice against the appellee through sympathy for the children. Objection to such testimony was correctly sustained." What we have in this case is simply the converse of that situation. Evidence that Parsons, the surviving husband, was a convicted felon and not supporting Mary Lou and the child could have had no effect except to create prejudice against the plaintiff's case.

Other opinions to the same general effect are Chesapeake & O. Ry. Co. v. Reeves' Adm'r, 11 Ky.Law Rep. 14, 11 S.W. 464, 466 (1889); · Louisville & N. R. Co. v. Howser's Adm'r, 201 Ky. 548, 257 S.W. 1010, 1014, 36 A.L.R. 327 (1924); Louisville & N. R. Co. v. Smith's Adm'r, 203 Ky. 513, 263 S.W. 29, 32, 35 A.L.R. 1238 (1924); Illinois Cent. R. Co. v. Applegate's

Adm'x, 268 Ky. 458, 105 S.W.2d 153, 160 (1937); and Bee's Old Reliable Shows v. Maupin's Adm'x, 311 Ky. 837, 226 S.W.2d 23, 26 (1950).

Under statutes that measure damages by pecuniary loss to the beneficiaries we can well understand that the relations between them and the decedent, and the misconduct of either spouse, are relevant circumstances, but we cannot avoid the conclusion that under our statute the character of Parsons and the relations existing between him and the wife and child are not pertinent to the measure of recovery.

Whether Mary Lou's living in adultery and the child's possible illegitimacy were proper subjects for consideration in determining their respective powers to earn money in the future is a closer question. Ordinarily, evidence concerning the character and habits of the decedent is relevant because they have a bearing on his earning capacity. Louisville & N. R. Co. v. Scott's Adm'r, 188 Ky. 99, 220 S.W. 1066, 1067 (1920). Nevertheless, there is a line to be drawn when the prejudicial or inflammatory nature of the evidence exceeds its probative value.

"That some aspects of a decedent's character may properly be shown in determining the damages to be awarded in a wrongful death action does not mean, however, that all of his habits and qualities are relevant. * * * The defendant should not be permitted to put in evidence anything he may unearth which reflects unfavorably upon the decedent. Except as they may show a propensity of the decedent to spend his income in ways which do not inure to the benefit of his family, the details of his personal life are not in issue and, in the present case, the history of St. Clair's relationship with the plaintiff bore no relation to any matter which was in issue. The manner in which men choose to conduct their personal lives very often has little bearing on the way that they manage their business affairs. In the absence of some preliminary showing to the contrary, a court ought not to suppose that evidence of the former is of utility in determining the latter. Moreover, in the case before us, any remote evidentiary value that the details of the decedent's personal life may have had was far outweighed by the certainty that prejudice to the plaintiff's case in the minds of the jurors would result from the introduction of evidence showing in an ill light not only the decedent but the plaintiff as well." St. Clair v. Eastern Air Lines, (2 Cir.1960), 279 F.2d 119, 121, 99 A.L.R.2d 965, 970.

Mary Lou was not employed at the time of her death. Though she had done some clerical work, her principal employment experience had been as a waitress. The testimony concerning her earning capacity was confined to the minimum wages for waitresses and for beginning clerk-typists in the Greater Cincinnati area. With respect to the little boy the only showing in this respect was the lowest pay for common labor in the same area. That Mary Lou was living in adultery and the son was being raised in the same household are circumstances that had little more than speculative bearing on her capacity to earn the minimum wage of a waitress or clerk-typist or on his prospects of earning, upon maturity, the wages of a common laborer. It is our opinion that evidence reflecting adversely on the moral character of the decedent should be permitted only in the clearest of cases in which its probative value distinctly outweighs the prejudicial effect it is bound to have. We think that in this case it was properly excluded.

The last point to be considered is the alleged denial of a trial by jury. The chronological order of pertinent events was as follows:

November 25, 1966: Complaint filed against Johnson, Empire and Larry Lee Noel's administrator (hereinafter called Noel).

December 22, 1966: Noel filed (1) answer and (2) cross-claim for contribution against Johnson and Empire.

December 30, 1966: Johnson and Empire filed (1) answer to complaint and (2) cross-claim for *indemnification* (not contribution) against Noel, alleging sole negligence on the part of Larry Lee Noel.

January 27, 1967: Plaintiff filed demand for jury trial.

February 23, 1967: Noel filed answer to Johnson's and Empire's cross-claim. Appellants say this late filing was by agreement, but there is nothing in the record to show it, and there is no order permitting it.

June 14, 1967: Order entered setting the case for trial without a jury on August 29, 1967, and requiring pretrial briefs at least 14 days in advance of trial.

August 24, 1967: Hearing on a motion by Johnson and Empire relating to interrogatories.

August 29, 1967: Trial. Appellants say they moved for a trial by jury at this time, but it is not shown in the record. Nevertheless, it may be assumed for sake of the discussion that the motion was made.

The right to a jury trial is waived unless it is demanded within 10 days after service of the last pleading directed to an issue triable by jury. CR 38.02, 38.04. Assuming that Johnson and Empire could rely on the demand made by plaintiff on January 27, 1967, that demand was not timely. The answer filed (or served) by Noel on February 23, 1967, was not within the time required by CR 12.01, and there was no enlargement as authorized by CR 6.01. Moreover, the answer filed on February 23, 1967, did not create a jury issue, because the cross-claim to which it responded did not raise any issue of fact not theretofore triable under Johnson's and Empire's answer, in which they denied negligence, and under Noel's cross-claim

for contribution against Johnson and Empire (to which cross-claim Johnson and Empire apparently did not present an answer, as such). The allegation that the accident resulted from the sole negligence of Larry Lee Noel amounted to nothing more than a denial of negligence on the part of Johnson and Empire and, if proved, would not have given rise to a right of indemnity, since there would have been no liability against which to be indemnified. Cf. Lexington Country Club v. Stevenson, Ky., 390 S.W.2d 137, 143–144 (1965); Schuster v. Steedley, Ky., 406 S.W.2d 387, 390 (1966).

The judgment is affirmed.

All concur.