Estill PRUITT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Nov. 3, 1972.

G. D. Milliken, Jr., Milliken & Milliken, Bowling Green, for appellant.

Ed W. Hancock, Atty. Gen., Kenneth A. Howe, Jr., Asst. Atty. Gen., Frankfort, for appellee.

REED, Justice.

Estill Pruitt, the appellant, was indicted for murder but found guilty by a jury of voluntary manslaughter and sentenced to 15 years in the penitentiary. Pruitt contends that he was entitled to a directed verdict of acquittal and that incompetent evidence was admitted over his objection, the prejudicial effect of which was not cured by a later admonition by the trial judge to the jury not to consider this objectionable evidence for any purpose.

It appears from the evidence that Pruitt, a married man, was having an affair with Rosemary McCormack. Pruitt and his girl friend went to the Paradise Club, a small beer joint in Bowling Green, for the purpose of negotiating to purchase the business from the owner, Mitchell White. Pruitt and White got together over several drinks to discuss the sale. Several other persons were in the bar, some of them at the negotiating table, and it was from them that most of the testimony about the incident was obtained.

Contradictory versions of the events were related by Pruitt and Rosemary McCormack on the one hand and by other patrons in the bar on the other. Pruitt and White argued over when the deal should be closed and payment made. They then got into a fight and from that point on guns began to appear. Pruitt and Rosemary McCormack said that White produced a .38 caliber revolver from behind the bar and only when Pruitt took out his own .25 caliber pistol did White put his weapon down, whereupon Pruitt picked it up. Pruitt stated that he then turned around to address Rosemary McCormack and White produced a .22 caliber revolver and shot him in the back of the neck, which prompted Pruitt to fire the shots at White as a result of which White died some two months later.

The patrons in the bar testified that White never had a gun, that Rosemary McCormack was the one who took the .38 pistol from behind the bar and after she shot up the barroom gave the pistol to Pruitt. They also testified that Pruitt said he was going to kill White and subsequently did shoot him. There was evidence that indicated both Pruitt and White had made prior statements indicating a desire, and on some occasions an intention, to kill each other. When a detective arrived at the scene, he could not find any gun other than two pistols, one a .25 caliber and the other a .38 caliber, both in Pruitt's possession. No .22 caliber pistol was ever produced.

In order to sustain Pruitt's argument that he was entitled to a directed verdict of acquittal, it would be necessary to accept the version of the tragedy related by Pruitt and Rosemary McCormack and reject the testimony of the other witnesses. It appears that the evidence was in direct conflict and, although Pruitt did receive a bullet wound in the back of the neck, the total evidence, direct and circumstantial, required a jury determination. Hence, we conclude that Pruitt was not entitled to a directed verdict of acquittal.

Sandra White, the decedent's sister-in-law, testified on behalf of the defendant.

During her direct examination she was asked: "Do you know his [White's] general reputation for being a violent and dangerous man?" She answered "yes" and that his reputation was bad. On her cross-examination by the Commonwealth, she was asked if she knew the reputation of Pruitt for "the same characteristics." Pruitt's counsel objected to the question on the ground that Pruitt had not put his reputation for these characteristics in issue and that the evidence was inadmissible. The trial judge overruled the objection and the witness answered that Pruitt's reputation was bad.

Later, the same course of events occurred during the testimony of officer John Payne. At this point, the trial judge directed counsel for the prosecution and for the defense to come into chambers. There counsel for Pruitt repeated his objection to the reputation testimony and requested the court to declare a mistrial. The trial judge overruled this motion and then counsel for Pruitt requested the court to admonish the jury not to consider the reputation evidence given by Sandra White and officer Payne.

These events took place near the end of the trial, and at this point the trial court finally admonished the jury not to consider any testimony as to Pruitt's reputation. In chambers, the trial judge expressed to counsel his impression that an admonition might only point up the error and emphasize it.

During the course of the trial, the Commonwealth also was permitted to introduce the testimony of Pruitt's wife that her husband and Rosemary McCormack were having an illicit love affair. Pruitt was cross-examined concerning whether Rosemary had broken up his home. All of this evidence was introduced over Pruitt's objection.

■ On this appeal, the Commonwealth argues that in each instance concerning the admission of evidence, the error was harmless. We are unable to agree. The character of the person accused of a crime is not a fact in issue in a prosecution for the crime, and the prosecution cannot introduce evidence tending to show his bad character or reputation or that he has a tendency or disposition to commit the crime with which he is charged unless the accused first introduces evidence of good character or reputation. See 29 Am.Jur. 2d, Evidence, Sec. 340, p. 389. "There is a clear distinction in the rules of practice relating to the introduction of reputation evidence. The difference rests upon the ground that evidence of a bad trait which may have affected the defendant's conduct in relation to the offense for which he is upon trial is substantive proof going to his guilt or innocence, while evidence as to his reputation for veracity is not of that character, and merely affects his credibility as a witness." Shell v. Commonwealth, 245 Ky. 223, 53 S.W.2d 524 (1932).

■ The evidence concerning Pruitt's marital infidelity was completely irrelevant to the issue on trial. In Dye v. Commonwealth, Ky., 477 S.W.2d 805 (1972), the evidence concerning domestic difficulties was directly relevant to the circumstances of the occurrence. See also Francis v. Commonwealth, Ky., 468 S.W.2d 287 (1971). We conclude that the evidence concerning Pruitt's marital infidelity was inadmissible.

■ We think the issue of whether the erroneous admission of the reputation evidence and the evidence concerning marital infidelity was harmless error, the effect of which was cured by the court's admonition, must be considered in the context of the individual case. The court's admonition went only to the reputation evidence and, therefore, the jury was left free to consider the marital infidelity evidence as relevant. The reputation evidence was allowed to stand for the jury's consideration on two different occasions over Pruitt's objection. It was only near the end of the trial that the admonition was finally given.

The trial judge's own doubts concerning its prejudicial effect were apparent in his comment to counsel that perhaps an admonition would merely emphasize and point up the error.

In view of the equivocal circumstances of the entire altercation between Pruitt and White, we are unable to say that Pruitt's guilt of voluntary manslaughter meriting a penalty of 15 years' confinement was so clearly and preponderately established by competent evidence that the inadmissible evidence could not have tainted either the determination of guilt or the extent of the penalty. We are, therefore, compelled to remand the case for a new trial.

The judgment is reversed for further proceedings consistent herewith.

All concur.