J.D. BARNETT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 87–SC–710–MR.

Supreme Court of Kentucky.

Dec. 15, 1988.

Rehearing Denied Feb. 9, 1989.

Frank E. Haddad, Jr., George Salem, Jr., Louisville, for appellant.

Frederic J. Cowan, Atty. Gen., Elizabeth A. Myerscough, Asst. Atty. Gen., Frankfort, for appellee.

LEIBSON, Justice.

The jury convicted the appellant for intentional murder and fixed his punishment at twenty years, the minimum sentence.

At the time of the murder the appellant was 57 years old, with no previous criminal history. The Commonwealth's theory was that the appellant carefully planned and carried out the murder of his wife of forty years to dispose of her while retaining the money and property they had accumulated during their marriage.

In support of this theory the Commonwealth produced evidence much of which the defense challenges as inadmissible. A former paramour testified regarding a longstanding extramarital affair which, however, ended 21 months before the murder occurred. She testified that during the course of their relationship the appellant told her he would never divorce his wife because of the money it would cost him. Additionally, the Commonwealth produced the testimony of a son-in-law that shortly before the date of the crime the victim had told him that she would leave her husband if he took another vacation without her, and the testimony of a divorce attorney that more than a year before her death the victim had consulted him about domestic problems, principally about tracing the proceeds from certain certificates of deposit that she had jointly held with her husband. Bank employees testified that within the year before the victim's death the appellant had transferred approximately $90,000 from certificates of deposit jointly held with his wife to the account of a Delores Fife, who in turn retransferred $75,000 of these funds to the appellant after his wife's murder.[1]

This case unfolds with the kind of drama more likely encountered in a made-for-television murder mystery rather than a courtroom. The murder occurred in the hour before midnight on July 29, 1985, on a dark and lonely road winding between two major thoroughfares. After the murder occurred, the appellant flagged down a passing motorist to get him to call the police to the scene. He cooperated fully in arranging a forensic examination of his person and his clothes, and he gave a voluntary tape-recorded statement to the police about four hours after the occurrence.

In this statement the appellant related that after a evening's visit with a fellow church member, he and his wife were returning home when the car started missing badly and then stalled out. He checked under the hood without success, and then

---

1. Delores Fife invoked the privilege against self-incrimination, refusing to testify in this case.

told his wife to roll up her glass and lock the doors, because he was going to walk over to a service station on Seventh Street Road, a round trip of about ten or fifteen minutes. The appellant worked nearby and was familiar with the neighborhood. When he reached the service station he found it closed, so he elected to return to his truck, meanwhile trying to flag down vehicles with his flashlight without success. When he returned to the truck he opened the door on the driver's side with his extra set of keys, saw that his wife was not in the truck, walked around the front of the truck and found her lying beside the truck with a lot of blood flowing from her face or mouth. He reached down to see if she had any warmth and he "might" have touched her; then realizing that it was useless, he again undertook to flag down the occasional passing motorists, finally succeeding in stopping one who agreed to call the police.

There was no eyewitness to prove the appellant guilty. There was testimony from passers-by who saw the appellant and his truck before and after the occurrence, some of which corroborated the appellant's story and some of which tended to cast doubt on certain details. Examination of physiological evidence consisting of swabs from the appellant and his clothes were reported as showing traces of blood, otherwise unidentifiable even as human blood. The serologist testified as an expert over objection that this was consistent with the appellant having washed off the blood which could have been expected from the vicious stab wounds in the victim's neck and chest. There was a large puddle of water near the scene, but no evidence was offered that it had been disturbed by washing, or of blood, and no one observed the appellant as wet or bearing any signs of a struggle. The Commonwealth's mechanic who examined the truck was unable to make the truck stall during vigorous testing, but there was evidence of mechanical problems and other evidence to sustain theorizing that it may have stalled out.

The key witness was a woman, Rose Pierce, living in the area near the crime scene, who, if believed, proved that the appellant was casing the scene during the week before the crime occurred. She testified to seeing the appellant's truck stopped in the neighborhood on several occasions in the week before the occurrence, and on one occasion seeing the appellant standing nearby. She made the identification from observing his television appearance at the time of his indictment, which was about six months after the occurrence and eighteen months before trial. She testified that she notified the police immediately through a friend, but the police only showed up to interview her and took her statement *two days* before the trial started.

Counsel for the appellant vigorously opposed permitting this witness to testify, claiming breach of pre-trial discovery orders and procedures, concealment by the Commonwealth after representing that it was providing "open file" discovery, sandbagging and surprise. By court order entered with no prior objection, the Commonwealth had been directed to furnish names of witnesses and statements obtained before the trial started, and, apparently, it had complied omitting Rose Pierce.

On appeal the appellant complains that the evidence in this case, taken as a whole, was insufficient to sustain a guilty verdict, and further of eight different trial errors each sufficiently serious to require reversing and remanding for a new trial. Additionally, he claims that if we should deem no one of the trial errors sufficient in itself to require reversal, then the accumulation of errors is ground for reversal.

We have decided there was sufficient competent evidence to withstand the motion for a directed verdict of acquittal, but the trial court committed reversible error in at least four particulars: permitting the neighborhood witness to testify after the Commonwealth violated discovery procedures; permitting testimony about the appellant's extramarital affair which had terminated some twenty-one months before trial; permitting hearsay testimony from the victim's son-in-law and former attorney who repeated statements made by the victim about her marital problems; and permitting the Commonwealth's serologist to give expert opinion not included in the copy

of his report furnished to defense counsel, testimony to explain the significance of the physical evidence regarding traces of blood.

Only some of this testimony is inadmissible on retrial. The testimony as to the opinion of the expert and the testimony of the witness who claims to have observed the appellant casing the scene during the week before the murder constitute error only because of the Commonwealth's failure to properly provide pre-trial discovery. This classifies as trial error, but we do not exclude this testimony in passing on the sufficiency of the evidence. It will be admissible evidence in the event of a retrial.

It is impossible to detail all of the evidence pointing to the appellant's guilt within an opinion of reasonable length. We have already pointed to some of the more significant evidence against him. On the other hand, there was evidence, which, if believed, pointed to his innocence. This included: the murder weapon was never found although there was a thorough search of the area in which it was reasonable to expect that the accused would have disposed of it; a stranger was seen walking near the truck by several of the witnesses who were passers-by, and a composite drawing made of his description matched a known criminal who was never questioned; the appellant's employment time records indicated the appellant would have been at work when Rose Pierce claims that he was observed casing the scene. As stated by the Commonwealth at oral argument, the evidence against the appellant, if believed, was enough to convict but was "not overwhelming." The oft-stated rule from *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3, 5 (1983) is:

> "If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal."

The appellant cites us to a very recent decision from the United States Sixth Circuit Court of Appeals, *Moore v. Parke*, 846 F.2d 375 (6th Cir.1988), which in effect overruled one of our decisions about the sufficiency of the evidence, granting habeas corpus relief on grounds that the proof was constitutionally insufficient to sustain a verdict. This was a 2/1 decision, using the standard established in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979). *Jackson* holds that under the Due Process Clause the question of constitutional insufficiency turns on "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789. We do not believe the standard in *Jackson* is any different in substance from our own standard as stated in *Commonwealth v. Sawhill, supra.*

As stated the Commonwealth had given the appellant's counsel the statements of all of the Commonwealth's witnesses before the trial except Rose Pierce. Also, according to defense counsel, a week before trial the Commonwealth had given a list of the names of its witnesses and the order in which they would testify, but the name of this critical witness was omitted from the list. The record reveals that her name, with nothing more, was mentioned in passing in the middle of a list of some thirty-one witnesses read off before the jury on voir dire. Apparently this blip went by unnoticed by defense counsel. There was no mention of this witness by name, nor of the substance of her testimony in opening statement. Defense counsel first became aware of her existence five days after the trial started when the Commonwealth was preparing to put her on the stand, and then offered a copy of her statement.

Trial started on June 19, 1987. The statement of Rose Pierce had been taken two days before. The statement was first produced on June 24, and the witness testified on June 25. Had the statement been produced at the commencement of trial the defense would have had an additional five days to investigate the background and credibility of this critical witness.

The Commonwealth insists that RCr 7.24 does not require the Commonwealth to fur-

nish the names and addresses of its witnesses and RCr 7.26 does not require the Commonwealth to produce before trial the statements of witnesses who will be called to testify on its behalf. In *Wright v. Commonwealth*, Ky., 637 S.W.2d 635 (1982), we held that a "common-sense-construction of the rule [RCr 7.26] ... is that if the Commonwealth intends to use a witness and the defense seeks access to his recorded statements it is within the trial court's sound discretion whether to allow it prior to trial." *Id.*, at 636.

RCr 7.24 does not require the Commonwealth to produce a list of witnesses in advance of trial, and RCr 7.26 only requires production of statements in a limited manner. Nevertheless, the question before us in *not* what the rules require, but what the Commonwealth seemingly agreed to furnish by "open file" discovery, and then withheld.

■ The Commonwealth conceded that this was "a violation of 7.26," arguing that "a mistake was made," but "it wasn't malicious." The trial court accepted this explanation and permitted the witness to testify after giving the defense overnight to interview the witness and investigate her background as best it could. In a case where the murder is shrouded in mystery and the question of guilt hung in the balance, it will not do to permit the possibility that victory was obtained by ambush and surprise, even if we accept that the mistake was not "malicious." As stated in *James v. Commonwealth*, Ky., 482 S.W.2d 92, 94 (1972), the system cannot tolerate "a cat and mouse game whereby the Commonwealth is permitted to withhold important information requested by the accused." This is a case where the jury first reported that it was deadlocked, and only returned a verdict after it was directed by the court to resume deliberations and "try" to reach a verdict. It then found the appellant guilty, but fixed the minimum punishment, 20 years, on evidence which, if believed, would result in a much more severe sentence because it proved a carefully planned, coldblooded and premeditated murder for money. We cannot say that failure to discover Rose Pierce's statement until the fifth day of trial, thus denying any reasonable opportunity to investigate the circumstances, did not result in the guilty verdict.

■ Next, we consider the testimony of the Commonwealth's serologist who testified that there were faint traces of blood that could be found on the appellant's hands and arms, and then opined that this was attributable to washing away the blood that could have been expected from the victim's wounds. Appellant first contends that this was an impermissible speculation, rather than an opinion, there being no evidence from which it could be inferred that the appellant engaged in washing to support a hypothetical question, as required by *Hodge v. Commonwealth*, 289 Ky. 548, 159 S.W.2d 422 (1942). The presence of a nearby puddle would support an inference, albeit weak, that there was at least an opportunity for the appellant to wash the blood off of his hands. This evidence was weak because the undisturbed condition of the puddle and of the appellant and of his clothing refuted the implication that washing had occurred. All things considered, we conclude that the serologist's conclusion was admissible as opinion evidence, but the appellant was entitled under RCr 7.24 to be confronted with the fact that this opinion would be presented against him before the trial started so that he had a reasonable opportunity to defend against the premise. RCr 7.24(1)(b) requires that on motion the Commonwealth must produce "results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case." The appellant moved for this discovery and was provided a report which did not include this significant piece of information, the expert's opinion as to what the physical findings indicated. *James v. Commonwealth, supra,* suggests that this was error, and given the equivocal background circumstances, here it was reversible error.

■ We agree with the appellant that the trial court erred in permitting a witness to testify that she had had an extramarital affair with the appellant that went on for

many years when the affair had terminated in November, 1983, some twenty-one months before the murder. There is no question but that such evidence tends to "smear" the defendant's character when character is not an issue. *Brown v. Commonwealth*, Ky., 275 S.W.2d 928 (1955). We have held evidence of marital infidelity irrelevant and incompetent in a number of cases. *See, e.g., Acres v. Commonwealth*, Ky., 259 S.W.2d 38 (1953), *Pruitt v. Commonwealth*, Ky., 487 S.W.2d 940 (1972), and *Stallings v. Commonwealth*, Ky., 556 S.W.2d 4 (1977).

In the present case the Commonwealth contends that the evidence was not offered to prove the appellant disregarded his marital vows, but only to establish motive. The only portion of this witness's evidence tending to establish motive was her testimony that the appellant said he would never divorce his wife because he did not want to lose any of the money or property accumulated during his marriage. Arguably such statements tend to show motive and are not too remote, but evidence about such statements could have been admitted unburdened by background information establishing an extramarital affair. With this excess baggage its inflammatory nature far outweighed any probative value. *See Empire Metal Corp. v. Wohlwender*, Ky., 445 S.W.2d 685 (1969); *Commonwealth v. Morrison*, Ky., 661 S.W.2d 471 (1983); and *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984), cert. denied, 469 U.S. 860, 105 S.Ct. 192, 83 L.Ed.2d 125.

■ Next we consider the hearsay testimony given by the victim's son-in-law and by her former attorney repeating complaints by the victim about the appellant's marital misconduct. As we stated in *Jarrell v. Commonwealth*, 240 Ky. 845, 43 S.W.2d 177, 178 (1931), "proof of such statements of the deceased out of the presence of the defendant was a flagrant violation of the rule against the admission of hearsay testimony." Conceivably, if there had been proof that the appellant knew that his wife had made statements of this nature, the testimony might be admissible as tending to show motive. They might be admissible not for their truth but as bearing on the appellant's state of mind. *See* Robert G. Lawson, *Kentucky Evidence Law Handbook*, 2d ed., 1984, p. 199. But the Commonwealth has admitted that there was no evidence that the appellant knew of the victim's conversation with either her son-in-law or the former attorney, only the speculation that perhaps this was so. In such circumstance this evidence was inadmissible hearsay unrelated to any proper nonhearsay use of a victim's statements. Admitting such evidence in this case constituted prejudicial error.

■ The appellant complained that the trial court had improperly refused to allow evidence that he voluntarily submitted to a polygraph. In *Penn v. Commonwealth*, Ky., 417 S.W.2d 258 (1967), we stated why such evidence is inadmissible, and we adhere to that decision.

The remainder of the appellant's claims of error are either lacking in merit or of such a nature that they are unlikely to occur on retrial.

We reverse and remand subject to a new trial conducted consistent with this Opinion.

STEPHENS, C.J., and GANT and LAMBERT, JJ., concur.

STEPHENSON and VANCE, JJ., dissent.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because Barnett's claims do not amount to reversible error. I believe the trial judge had the best opportunity to consider and evaluate the allegations of error and correctly decided each question.

Barnett contends that he was unfairly surprised by the testimony of a serologist because the expert's testimony went beyond the information contained in a laboratory report previously provided by the prosecution. I do not believe there was any violation of RCr 7.24 simply because the expert offered an opinion or explana-

tion based on his training. No tests or experiments were conducted in connection with this particular case in order to reach his conclusions. No discovery was withheld because no tests were involved. *James v. Commonwealth*, Ky., 482 S.W.2d 92 (1972). All the serologist did was explain that the victim's blood could have been diluted by washing.

The trial court did not abuse its discretion in allowing the testimony of witness Pierce. Although there may have been a technical violation of RCr 7.26, it was not so great as to prejudice Barnett or to require reversal. There is no showing that the prosecution was aware of the existence of the police letter.

It was not reversible error to allow testimony of a romantic relationship between the accused and another witness from 1972 until November, 1983. The testimony was introduced only to establish a motive for killing the wife. The admission of this testimony was a judgment call within the proper ambit of the trial judge.

The trial judge did not commit reversible error by allowing testimony from the victim's son-in-law and her former attorney relating to marital problems. Obviously the victim is unavailable for testimony. The statements were not admitted for their testimonial use, but for their relevant circumstantial use. The statements were not offered to prove the victim would leave her husband if he took another vacation or that the husband transferred marital assets. The statements tended to show that the accused feared the loss of money and property accumulated during the marriage and that a separation would reduce his economic position. They were not admitted for the truth of the matter asserted, but for their indirect value of establishing a motive for the murder and were therefore not barred by the hearsay rule. 6 Wigmore, *Evidence* § 1788 (Chadbourn rev. 1976). I believe the trial judge was correct in his conduct of this aspect of the trial, and I would affirm the conviction.