549 So.2d 443 (1989)
Flora PARKER
v.
JONES COUNTY COMMUNITY HOSPITAL and William Burke, M.D.
No. 07-58555.
Supreme Court of Mississippi.
September 13, 1989.
Wynn E. Clark and Joe Sam Owen, Owen Galloway & Clark, Gulfport, for appellant.
Brooke Ferris, III, Gibbes Graves Mullins Firm, Laurel, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and PITTMAN, JJ.
ROBERTSON, Justice, for the Court:
This appeal asks that we hold an abuse of discretion a circuit court's refusal to order a mistrial in the face of defense counsel's suggestion before the jury that plaintiff's decedent had been "disfellowshipped" from his church. The Circuit Court sustained plaintiff's objection and admonished the jury to disregard the question and answer.
Flora Parker brought this suit for the wrongful death of her husband, James L. Parker, after an auto accident, alleging malpractice by Jones County Community Hospital and their emergency room physician, William Burke. The jury returned special verdicts on November 18, 1986, in favor of Jones County Community Hospital and without decision as to Dr. Burke. The Circuit Court entered final judgment for the Hospital, and declared a mistrial as to Dr. Burke.
Parker appeals the judgment for the Hospital, see Rule 54(c), Miss.R.Civ.P., suggesting a single error:
The Circuit Court abused its discretion in failing to grant a mistrial when defense counsel stated to the plaintiff on cross-examination that her husband had been "disfellowshipped" from the church.
*444 All of the relevant facts appear in the following colloquys, first with Mrs. Parker being questioned by her own attorney:
Q: I believe it was brought up during either  I think it was in voir dire examination by Mr. Ferris, that you are a member of the Jehovah Witness church; is that correct?
A: Yes.
Q: Where is that located?
A: On 6712 Hillcrest Drive, out west of Laurel.
Q: West of Laurel?
A: West of Laurel.
Q: Okay.
Later, during extensive cross-examination about the nature of Mr. Parker's injury and his condition after release from Jones Community Hospital, etc., the following relevant questioning was had:
Q: Now prior to 1981 had you and your husband ever lived apart?
A: No.
Q: Had not?
A: No.
Q: All right. Now, during the taking of your deposition you stated that your husband had been disfellowshipped from the church; is that correct?
A: Yes
MR. OWEN:  if the Court please, I object to that.
THE COURT: What's the purpose of this, Mr. Ferris?
MR. FERRIS: Your honor, the purpose is to find out  is to get her to say why, and I think it's relevant to the issues in this case.
MR. OWEN: No, it's not, if it please the Court.
MR. FERRIS: Could we approach the bench?
MR. OWEN: Under the rules, religious affiliation  counsel knows better than this.
MR. FERRIS: No, that's not  I am not talking about that. Wait a minute.
At an extensive bench conference, outside the hearing of the jury, defense counsel explained that his purpose was to suggest that Flora Parker and her husband had been separated for several years before his death and that this was relevant on the issue of quantum of damages. The chambers hearing also developed that the Jehovah's Witness church disfellowshipped James Parker because he had been involved with another woman. Counsel also explained to the Court that being disfellowshipped as a Jehovah's Witness is the equivalent of excommunication in the Catholic church. The Circuit Court in the end sustained Parker's objection.
Still outside of the jury's presence, Parker moved for a mistrial. The motion was denied. When the jury returned, however, the Circuit Court instructed:
Members of the jury, immediately prior to the time that you went out into the jury room there had been a question asked concerning the deceased's relationship with his church. That's an improper question in this case, and I am going to instruct you to disregard the asking of that question or the witness's [sic] answer to it. I want to ask you if you can now assure me that you can disregard that question and that answer. Can you do that? All right. Let the record show that the jury says that they can disregard that question and answer.
On appeal Parker argues that a confluence of Rules 404, 403 and 610, Miss.R.Ev., require a holding that the evidence that James Parker had been disfellowshipped was inadmissible.
We begin with Rule 610 which provides as follows:
Religious Beliefs and Opinions
Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature his credibility is impaired or enhanced.
Comment
This rule prohibits impeaching a witness by questioning him concerning his religious beliefs and opinions. It does not prohibit questioning him as to those beliefs and opinions when testing his bias or interest.
*445 The common law required, as a qualification for taking the oath as a witness (i.e., competency), the belief in a God who would punish untruth. That rule has long been abandoned. The Mississippi Code of 1906 included the provision that "A person shall not be incompetent as a witness because of his religious belief or want of it." § 1919, Miss.Code 1906. See also Peters v. State, 106 Miss. 333, 337, 63 So. 666, 666 (1913).
Rule 610 by its terms speaks to the credibility of witnesses. It precludes evidence of religious belief or lack thereof when offered for the purpose of enhancing or impairing a witness' credibility. Weinstein's Evidence, 610[01], p. 610-3 (1988); Louisell, Federal Evidence, Religious Beliefs, § 329, p. 385 (1979).
The credibility of a witness is not implicated today. Parker's reliance on Rule 610 is wholly misplaced. The reason evidence that James Parker may have been disfellowshipped was not admissible is that such evidence is not relevant evidence, that is, it is not evidence having any tendency to make the existence of a material fact more probable or less probable than it would have been without the evidence. Rule 401, Miss.R.Ev. The point is consistent with our pre-Rules view, illustrated by such holdings as that evidence of insurance coverage is inadmissible in a tort action, Scott County Co-op v. Brown, 187 So.2d 321, 324-25 (Miss. 1966); cf. Royal Oil Co., Inc. v. Wells, 500 So.2d 439, 448 (Miss. 1986); "living in sin" questions, Hughes v. State, 470 So.2d 1046, 1048 (Miss. 1985), Sumrall v. State, 272 So.2d 917, 919 (Miss. 1973); and suggestions of drug or alcohol use, Holladay v. Tutor, 465 So.2d 337, 338-39 (Miss. 1985); Pope v. McGee, 403 So.2d 1269, 1271 (Miss. 1981) (testimony concerning warm beer and unidentified white powder in automobile).
Addressing the point in a wrongful death action, the Court of Appeals in St. Clair v. Eastern Air Lines, Inc., 279 F.2d 119 (2d Cir.1960) explained the reason for the rule.
The defendant should not be permitted to put in evidence anything he may unearth which reflects unfavorably upon the decedent. Except as they may show a propensity of the decedent to spend his income in ways which do not inure to the benefit of his family, the details of his personal life are not in issue and, in the present case, the history of St. Clair's relationship with the plaintiff bore no relation to any matter which was in issue. The manner in which men choose to conduct their personal lives very often has little bearing on the way that they manage their business affairs. In the absence of some preliminary showing to the contrary, a court ought not to suppose that evidence of the former is of utility in determining the latter. Moreover, in the case before us, any remote evidentiary value that the details of the decedent's personal life may have had was far outweighed by the certainty that prejudice to the plaintiff's case in the minds of the jurors would result from the introduction of evidence showing in all light not only the decedent but the plaintiff as well.
279 F.2d at 121.
Without further ado, we hold that the question concerning Parker being disfellowshipped by the Jehovah's Witness church was impermissible. The Circuit Court correctly sustained Parker's objection and further instructed the jury to disregard the question and answer and obtained the assent of each juror that he or she would follow the instruction. Our question then becomes whether a combination of the Court's action in sustaining Parker's objection and instructing the jury was sufficient to preclude reversal.
The law of error and curative instructions seems to be an analog to harmless error. In Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293 (Miss. 1988), a personal injury lawsuit, the jury heard, in violation of Rule 409, Miss.R.Ev., that the defendant had paid a hospital bill for the plaintiff. The Circuit Court sustained an objection to the question and answer, and instructed the jury to disregard them and any reference to such payments by the appellant. Further, the lower court polled *446 the jury to "insure that his instruction was understood by the jurors."
Generally speaking, our law presumes that jurors follow the trial judge's instructions, as upon their oaths they are obliged to do. Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d at 295; see also Dabbs v. Richardson, 137 Miss. 789, 807, 102 So. 769, 771 (1925); Mississippi Farm Bureau Mutual Insurance Co. v. Todd, 492 So.2d 919, 934 (Miss. 1986); Atwood v. Lever, 274 So.2d 146, 148 (Miss. 1973); Hunt v. State, 538 So.2d 422, 426 (Miss. 1989). For the criminal equivalent, see Shoemaker v. State, 502 So.2d 1193, 1195 (Miss. 1987); Gray v. State, 472 So.2d 409, 414 (Miss. 1985); Evans v. State, 422 So.2d 737, 744 (Miss. 1982); Ratliff v. State, 317 So.2d 403 (Miss. 1975); Clanton v. State, 279 So.2d 599, 602 (Miss. 1973). We have been offered no reason sufficient that we should take this case out of the general rule. Suffice it to say that the record abounds with reasons why a rational jury would find for the Hospital above and beyond their inkling that James Parker may have been disfellowshipped.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.