**COMMONWEALTH of Kentucky, Appellant,**

v.

**David NICHOLS, Appellee.**

No. 2007–SC–000493–DG.

Supreme Court of Kentucky.

March 19, 2009.

Jack Conway, Attorney General, Heather Michelle Fryman, Assistant Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellant.

Emily M.W. Roark, Bryant Law Center, PSC, Paducah, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

Appellee, David Nichols, was previously convicted in the McCracken Circuit Court of one count of criminal abuse in the second degree and sentenced to serve five years in prison. On appeal, however, that conviction was vacated, and the case was remanded to the McCracken Circuit Court for a new trial. The retrial was scheduled for September 6, 2006.

Prior to trial, Nichols filed a motion requesting the trial court to clarify whether his defense counsel was obligated, pursuant to RCr 7.24, to disclose to the Commonwealth the identity of his expert witness and to provide to the Commonwealth a written report regarding the expert's anticipated testimony at trial. Nichols's expert had not prepared a report. It was Nichols's position, therefore, that no report could be produced and that the Commonwealth was not entitled to the expert's identity.

In an order entered July 18, 2006, the trial court held that RCr 7.24 does not require an expert witness to generate a report just to satisfy the rules of reciprocal discovery. As long as there is no report, there is no obligation to provide one to opposing counsel. However, the trial court ruled that because the "spirit" of RCr 7.24 requires such disclosure, and in order to give the Commonwealth a timely opportunity to request a *Daubert* hearing, Nichols was required to provide the full name and address of any expert witness he planned to call at trial. The Commonwealth's motion to alter, amend, or vacate the trial court's ruling was denied on August 8, 2006. At that stage of the proceeding, Nichols was under no obligation to generate a report solely for discovery, but was required to give the name and address of any expert witness expected to testify at trial.

On July 27, 2006, the Commonwealth filed an interlocutory appeal pursuant to KRS 22A.020(4), objecting to the trial court's ruling that Nichols's expert witness was not required to generate a report for reciprocal discovery. On August 3, 2006, Nichols filed a cross-appeal, objecting to the requirement that he provide the full name and address of the expert witness to the Commonwealth.

The Court of Appeals issued an opinion affirming in part and reversing in part, stating that the trial court did not abuse its discretion by failing to require Nichols's expert witness to generate a report for the Commonwealth. However, the Court of Appeals also stated that the trial court did abuse its discretion by ordering Nichols to provide to the Commonwealth the name and address of the expert witness. The Commonwealth petitioned for discretionary review before this Court. No cross-appeal was filed by Nichols, apparently since the opinion of the Court of Appeals was favorable on both issues. Both issues were briefed for the Court and oral arguments were heard.

Discovery in criminal cases, by either the Commonwealth or the defendant, was practically non-existent in the common law. The common law courts deemed themselves without inherent power to order such relief. Eugene Cerruti, *Through the Looking–Glass at the Brady Doctrine: Some New Reflections on White Queens, Hobgoblins, and Due Process*, 94 Ky. L.J. 211 (2005–2006). What movement there was in the area of criminal discovery came primarily, although not entirely, from legislative reform. Our current RCr 7.24 was enacted in 1965 on the heels of the U.S. Supreme Court landmark case of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In that case, the appellant was convicted of murder while perpetrating a robbery. The question be-

fore the Court was whether the appellant was denied his constitutional rights where certain exculpatory evidence was not disclosed to the defendant. *Id.* at 87, 83 S.Ct. 1194.

Up until the enactment of RCr 7.24, the only discovery rule available in criminal cases allowed the defendant a copy of the grand jury transcript. That right was provided under Section 110 of the old Criminal Code of Practice. Before *Brady,* our Court did not require the Commonwealth to produce much of anything else. *See, e.g., Kinder v. Commonwealth,* 279 S.W.2d 782 (Ky.1955). Against this backdrop of statutory and judicial history, we now turn to the issues before us.

■ We begin by noting that the posture of this case is procedurally flawed. Nichols cannot file an interlocutory cross-appeal. Rather, KRS 22A.020(4) is uniquely for the benefit of the Commonwealth. Therefore, the Court of Appeals did not have jurisdiction over the issue of the trial court's order requiring disclosure of the name and address of the defense expert. *Evans v. Commonwealth,* 645 S.W.2d 346–47 (Ky.1982). Accordingly, that portion of the Court of Appeals' opinion must be vacated and the order of the trial court reinstated.

■ We then turn to the remaining issue as to whether the trial court was required, pursuant to RCr 7.24, to mandate that Nichols's expert witness generate a report for production to the Commonwealth. "The interpretation of criminal procedural rules is a question of law rather than a question of fact. Therefore, we give no deference to the interpretation of the rule by the [trial court]." *Commonwealth v. Yelder,* 88 S.W.3d 435, 437 (Ky.App.2002).

The pertinent part of RCr 7.24 is as follows:

If the defendant requests disclosure under RCr 7.24(1), upon compliance to such request by the Commonwealth, and upon written request of the Commonwealth, the defendant, subject to objection for cause, shall permit the Commonwealth to inspect, copy, or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody, or control of the defendant, which the defendant intends to introduce as evidence or which were prepared by a witness whom the defendant intends to call at trial when the results or reports relate to the witness's testimony.

We believe the trial court was correct in interpreting the plain meaning of RCr 7.24 and denying the Commonwealth's request for Nichols's expert witness to generate a report. RCr 7.24 is unequivocal in requiring a defendant to permit the Commonwealth to have "any results or reports ... of scientific tests or experiments *made* in connection with the particular case ... which the defendant intends to introduce as evidence or which *were prepared* by a witness whom the defendant intends to call at trial when the results or reports relate to the witness's testimony." *See* RCr 7.24(3)(A)(i) (emphasis added).

The rule says what it says. It requires a defendant to produce reports that are in existence, but does not require a defendant to generate such reports for production to the Commonwealth.

But the question does not end here.

■ Our case law strongly supports the trial court's discretion in interpreting the meaning of RCr 7.24, as well as in making rulings outside the strict confines of the criminal rule in order to enforce the "spir-

it" it is intended to advance.[1] Broad discretion in discovery matters has long been afforded trial courts in both civil and criminal cases. *See Sexton v. Bates*, 41 S.W.3d 452, 455 (Ky.App.2001) (trial courts have broad, but not unlimited, discretion over the discovery process); *Berry v. Commonwealth*, 782 S.W.2d 625, 628 (Ky.1990) (trial courts have broad discretion to permit such orders as may be "just under the circumstances" in matters of discovery), *overruled on other grounds by Chestnut v. Commonwealth*, 250 S.W.3d 288 (Ky.2008).

■ In *Wright v. Commonwealth*, 637 S.W.2d 635 (Ky.1982), our Court held that a "common-sense" construction of RCr 7.26 must be utilized. While dealing with the sister rule of RCr 7.24, this case clearly proclaims that the trial court has sound discretion as to discovery rules. In *James v. Commonwealth*, 482 S.W.2d 92, 94 (Ky. 1972), it was announced that the system cannot tolerate "a cat and mouse game whereby the Commonwealth is permitted to withhold important information requested by the accused." Again, we indicated that the trial court has broad discretion which may extend beyond the strict wording of RCr 7.24.

One of the more important decisions of this Court, in a series of post-*Brady* and post-RCr 7.24 discovery decisions, is *Barnett v. Commonwealth*, 763 S.W.2d 119 (Ky.1988). In that case, we reversed a murder conviction based upon several grounds, two of which dealt with discovery. By court order, the Commonwealth had been directed to furnish the names of witnesses and statements obtained prior to trial. However, the Commonwealth refused to produce the name of a surprise witness who testified about having seen

the defendant casing out the scene of the crime some days before the murder. Defense counsel only became aware of the existence of this witness five days after the trial had begun. We noted that RCr 7.24 does not require the Commonwealth to produce a list of witnesses in advance of trial; but, in that instance, where the Commonwealth had "seemingly agreed" to furnish said witnesses, the Commonwealth was obligated to do so. In other words, under certain circumstances, such as the situation in *Barnett*, discovery obligations will extend outside the rule. *Id.* at 123. In *Barnett*, we also extended the obligation from merely producing a report of the Commonwealth's expert to one that is complete and provides due notice of the critical part of that witness's testimony. This was a noteworthy extension of the strict letter of RCr 7.24.

Since *Barnett*, we have considered numerous cases interpreting the dictates and the spirit of RCr 7.24. *See Vires v. Commonwealth*, 989 S.W.2d 946 (Ky.1999) (distinguishing *Barnett*); *Milburn v. Commonwealth*, 788 S.W.2d 253 (Ky.1989) (distinguishing *Barnett*); *Collins v. Commonwealth*, 951 S.W.2d 569 (Ky.1997) (Commonwealth not obligated to produce written authorities relied upon by its expert witness); *Gray v. Commonwealth*, 203 S.W.3d 679 (Ky.2006) (dealing with harmless error in discovery).

We are given much guidance by our most recent case of *Jones v. Commonwealth*, 237 S.W.3d 153 (Ky.2007), wherein we addressed a substantial discovery dispute dealing with DNA evidence. Both sides exchanged reports of their respective experts. The Commonwealth objected to the testimony of the defendant's expert

---

1. In RCr 7.24(6), there is language that carries a strong inference that the trial court retains broad discretion outside the dictates of the rule. It says, "On a sufficient showing, the court *may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate.*" (Emphasis added.)

outside the parameters of the report. *Id.* at 156–57. More specifically, the Commonwealth objected to that part of the defendant's testimony pointing out the shortcomings in the methodology used by the Commonwealth's expert. *Id.* The Commonwealth argued that this was a discovery violation and that such testimony should not be allowed. The trial court agreed that the defendant's expert could not testify outside the four corners of the report. *Id.* We reversed, basically stating that the trial court read too much into the rule, and that in disallowing the full testimony of the defendant's expert, the defendant was denied a valuable piece of evidence because of a perceived discovery violation. *Id.* at 160.

In *Jones,* we gave approval to the unpublished case of *George v. Commonwealth,* No. 2001–SC–1067–MR, 2003 WL 22227195 (Ky. September 18, 2003), where the facts are a mirror image to this case. There, it was the Commonwealth which did not produce a written report of its pathologist and did not disclose to the defendant the oral report given to the prosecutor. We acknowledged that under the explicit wording of RCr 7.24, the pathologist was not specifically required to issue a written report. However, we reversed the trial court's decision to allow the pathologist to testify, stating that the Commonwealth had violated the "spirit" of RCr 7.24. *Id.* at 156.

In *Jones,* there is constrictive language concerning the interpretation of RCr 7.24. However, when closely read, what this Court deals with in *Jones* is more of an abuse of discretion in handling a perceived discovery violation, rather than a prohibition of the use of discretion. In *Jones,* the trial court's decision denied the defendant a vital part of his defense—the ability to forge an attack upon the damning DNA testimony of the Commonwealth.

The common thread which runs through these cases, culminating in *Jones,* is that reciprocal discovery in criminal cases is important to the fair and orderly administration of these types of cases. But, "reciprocal" does not—indeed cannot—mean "equal." For the criminal defendant is cloaked with the due process protections afforded by both our state and Federal constitutions, and discovery orders by the trial court which trample upon these rights cannot be upheld. In short, the defendant is protected from overreaching discovery orders by the Fifth, Sixth, and Fourteenth Amendments to our U.S. Constitution and Section Eleven of our state constitution.

The U.S. Supreme Court has chimed in with support for the concept of reciprocal discovery in criminal cases. In *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the Court stated, "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." *Id.* at 82, 90 S.Ct. 1893. It went on, in upholding Florida's alibi notice requirement, that no Fifth Amendment protections were involved since they would be disclosed at trial anyway. This is the same for reports by defendants' experts already in existence. (This provides trial courts somewhat of an inconclusive and rough thumbnail standard as far as Fifth Amendment considerations are concerned. If the evidence is likely to come to light at trial anyway, it can hardly be considered to be compelled incrimination.) Consequently, the U.S. Supreme Court has also held that the discovery requirement of expert reports of the defendant does not violate the Fifth Amendment of the U.S. Constitution. *U.S. v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). It is clear from reading the *Nobles* case that

the Fifth Amendment will protect overbroad discovery orders against the defendant. Of particular relevance to the issue now before us, the Court stated: "The purpose of the relevant part of the Fifth Amendment is to prevent compelled self-incrimination, not to protect private information." *Id.* at 233 n. 7, 95 S.Ct. 2160.

■ Neither is the Commonwealth without protection from unbridled discovery mandates by the trial court. Discovery orders adverse to the Commonwealth are subject to abuse of discretion review. *Lowe v. Commonwealth,* 712 S.W.2d 944 (Ky.1986).

To require Nichols's expert to manufacture a report for production to the Commonwealth would clearly have forced Nichols to provide evidence which potentially—and even likely—would have been used against him at the prosecution of the case. Such a directive would, in effect, have caused Nichols to become a witness against himself. While the requirement to produce a report to the Commonwealth may seem innocuous enough, it is still purposed to assist the Commonwealth in its own prosecution. A requirement to create and produce a report is totally different from being required to produce a report either already in existence or prepared upon the defendant's own volition.

Fairness is the cornerstone of our justice system. At no place does that challenge come to rest more often than in the area of discovery—both in civil and criminal cases. Nothing tries the patience of the trial court more regularly than squabbles and lack of agreement between parties over discovery. That is because the judge recognizes how critical such questions are to the fair administration of the case. Furthermore, that judge is often cast upon the vast gray sea of discretion where no rule, no word, no phrase, no law clearly applies. That is why we hold today

that the trial court's discretion should not be cribbed by the exact wording of RCr 7.24. But, as *Jones* proclaims, in criminal cases, sensitivity to the dominant rule of due process and all which that affords a criminal defendant must always be close at hand. This is not easy. It is the rocket science of trial judging. Here, we believe, the trial judge got it right.

Accordingly, that portion of the Court of Appeals' opinion holding that the trial court abused its discretion by ordering Nichols to provide the name and address of his expert witness to the Commonwealth is vacated, and the trial court's order as to that issue reinstated. Further, that portion of the Court of Appeals' opinion holding that RCr 7.24(3)(A)(1) does not require Nichols's expert witness to generate a report regarding his testimony is affirmed.

All sitting. All concur.