RENDERED:  JUNE 13, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NOS. 2023-CA-1319-MR AND 2023-CA-1320-MR

COMMONWEALTH OF KENTUCKY                                      APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.             HONORABLE TRACY E. DAVIS, JUDGE
ACTION NOS. 22-CR-000824-001 AND 22-CR-000824-002


DEVON MYKEL BOWEN AND
KIANO JARRELL KNOX                                      APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, L. JONES, AND LAMBERT, JUDGES.

JONES, L., JUDGE:  In this interlocutory criminal appeal, the Commonwealth

appeals only the portion of a November 13, 2023 order of the Jefferson Circuit

Court which found the Commonwealth's disclosure of DNA test results on

November 2, 2023, was untimely and excluded the DNA report from trial with the

exception of test results from DNA samples taken from two Taco Bell straws.

On appeal, the Commonwealth argues that the trial court erred in applying RCr[1] 7.24(4) because the Commonwealth's disclosure of the DNA test results was not untimely. Arguing further, the Commonwealth states that because the disclosure of the test results was not untimely, the trial court further erred by excluding the DNA results. After careful review of the record, we do not find the Commonwealth committed a discovery violation, therefore, we reverse the portion of the order excluding DNA test results, and remand the case for further proceedings.

BACKGROUND

On April 27, 2022, Devon Mykel Bowen[2] and Kiano Jarrell Knox (hereafter jointly referred to as "Defendants") were indicted together on charges related to a home invasion which occurred on or about December 17, 2021.[3] As part of the investigation, two Taco Bell cups with straws were collected from an unoccupied vehicle found running at the scene. Numerous other items of physical evidence, including swabs containing potential samples of DNA, were collected from that vehicle and the surrounding area.

---

[1] Kentucky Rules of Criminal Procedure.

[2] Only Bowen has responded to the Commonwealth's appeal by filing an Appellee Brief.

[3] As this is an interlocutory appeal regarding discovery compliance, a detailed description of the alleged crimes is unnecessary for our review of the issue presented.

At arraignment proceedings for Defendants in May 2022, the court entered a boilerplate Order of Arraignment and Discovery which included the statement: "Within the time frames outlined in the Rules of Practice of the Jefferson Circuit Court, counsel shall comply with the Rules of Criminal Procedure regarding discovery."[4]

The first pretrial conference was held on May 27, 2022, after which the Commonwealth filed its initial discovery response on June 13, 2022.[5] It is undisputed that this initial discovery response contained a list of the evidence collected, including those items which were subsequently sent to the lab for DNA testing on October 18, 2023.

In October 2022, the court set a joint trial date for Defendants of May 23, 2023. On March 14, 2023, Knox requested a continuance of the trial date as he had obtained new counsel who needed time to delve into the case. Knox's motion was denied. Knox renewed his motion on April 27, 2023. This time the motion was granted and trial was rescheduled to begin on October 17, 2023. On May 2, 2023, and again on September 5, 2023, the Commonwealth supplemented their initial discovery response.[6]

---

[4] Appellee Brief for Bowen, App. A; Trial Record ("TR") for Knox, p. 65.

[5] TR for Bowen, p. 44; TR for Knox, p. 69.

[6] TR for Bowen, p. 70, 76; TR for Knox, p. 93, 100.

On September 27, 2023, Knox suggested a continuance of the October trial date due to scheduling conflicts. His motion was denied; however, Bowen subsequently sought a continuance in order to have more time to prepare, and that motion was granted. The October trial date was continued, and a new trial date was set for November 13, 2023.

In open court, on October 17, 2023, and in the presence of Defendants who were represented by counsel, the Commonwealth announced there was a new lead investigator on the case who planned to send multiple items off for DNA testing. The Commonwealth then tendered an order for the court to allow lab testing to consume the DNA samples taken from the two Taco Bell straws. The entirety of the exchange is relevant to our analysis of the timeliness of the DNA report.

> COMMONWEALTH: Judge, this is a motion to test straws recovered from a vehicle at the scene. And the reason I'm filing this motion, Detective Beckham has recently taken over this case. It was Detective Cansler's [case], but he is overseas serving our country.
>
> The – there was numerous items found throwed into this case. Detective Cansler sent a few of them off to be tested. Now that Detective Beckham has the case, he, I believe, would have handled it differently and get – now that there is a continuance, he wants to send items off. The lab has told him that, of the items he wants to send, the blood swabs are fine. There's enough blood that they won't be totally consumed. But the straws.

-4-

There were two cups found in a running vehicle at the scene. Each of those cups had a straw. To swab the straw and test the swab may consume all the DNA because the mouth of the straw is such a small area. So, they need – they require a consumption order.

. . .

COMMONWEALTH: And [the lab] will – they have assured us they can get this done in quick, in quick order. So, we'll have the results before trial.[7]

Knox, through counsel, raised the first objection, not to the consumption of evidence, but to DNA testing in general which he believed could cause further delay of trial and require a change in Knox's theory of the case.

COUNSEL FOR KNOX: I object, Judge, and this is why. I was ready for trial today. I was ready for trial yesterday. I was ready for trial on Friday. My client was ready to go. I asked for a continuance six months ago. It was denied.[8] We got ready then. We are ready now. My client is frustrated with me that we're not going today – that we're not in trial. He's mad at me and blaming me because of this.

And now they're gonna test stuff because my continuance was denied and we got ready. They had a chance then; they didn't do it. They had two years to do this. Now we're gonna walk into a trial and here we got: "Uh, we got some more stuff to give you." And what happens? What happens if my guy's DNA is on there? And, you know, and I didn't plan for that.

---

[7] Video Record ("VR") 10/17/23 at 10:20:40 to 10:21:53.

[8] The continuance was subsequently granted.

I wasn't even like worried about this car personally. I mean it doesn't factor into anything I've prepared – opening, closing, anything. It doesn't even factor into – it's irrelevant.

That being said, that could change everything. And now I'm sitting here going: "Well, we've worked on something for – we've got ready for six months – eight months – whatever amount of time it is – and now you get punished, Kiano, because they got a continuance. Your co-defendant got a continuance, and the Commonwealth gets to take advantage of it." And we objected. And we're ready to go. And, just, I think that's completely unfair.

And I get that they got a job to do and investigate, but why didn't they do it the last 20 months? And why are we doing this now, when my client wanted to be in trial and ready to go to trial? And here we – we don't get to and he has to sit in custody.[9]

The trial court then explained the reason a continuance was granted, the Commonwealth's accommodation of the parties' schedules in setting a new trial date, and the trial court's belief that DNA testing is important.

JUDGE: I understand your argument, but it wasn't the Commonwealth that asked for the continuance. The Commonwealth objected and was ready to go. And, so, I believe that we pondered on this issue for a while. I knew that, Mr. Knox – we have a history, right – would be upset. The court did note that he had the right to go to trial and that was his day. But out of due caution, there was a motion that was made by the co-defendant, and that was argued. And we only passed this for a very short period of time – to the thirteenth. I tried to give you all the seventh to accommodate everyone's schedule.

[9] VR 10/17/23 at 10:21:55 to 10:23:25.

I believe the Commonwealth was even out of the office at that point in time and was to be unavailable the whole next day and availed herself so that we could accommodate, because the Court was ready to go.

*And the information could be exculpatory.* I don't know. Because all the information is for DNA testing in a DNA lab.[10]

Counsel for Bowen then expressed concern with the destruction of potential DNA samples, that the test results may not be exculpatory, and that Defendants may not have time to consult their own experts before the November trial date.

COUNSEL FOR BOWEN: And, Judge, if I could (inaudible). I generally join [Counsel for Knox's] objection to it. I think my main focus on the destruction order being signed and – actually I think I argued this point in a different case – is the concern that if it comes back as something like – DNA's not been on the radar, and this car's not been on the radar, really, outside the fact that it was running at the scene as opposed to my client's phone was in it.

But as far as anything being tested, I agree. It's been almost two years. It's not been sent away (inaudible). And having DNA coming back can completely change the landscape of the case for us – either for good or for bad. And with the destruction order, there's not an opportunity to really try to do anything on the back end other than see what the (inaudible) analysts in the Florida lab did. I'm assuming this is the Florida lab since it's supposed to be able to come back.

And then, the other concern is the timing of which it's going to come back could – in proximity to the thirteenth. So, with the exception of the definitely ready to go in the

---

[10] VR 10/17/23 at 10:23:26 to 10:24:34 (emphasis added).

things leading up to right this second, I'm joining [Counsel for Knox's] objection and adding those things.[11]

The trial court next inquired into the parties' knowledge of the two Taco Bell straws which could be destroyed by the DNA testing.

> JUDGE: But we were aware that there were Taco Bell cups?
>
> COUNSEL FOR BOWEN: I believe they were in the pictures from the search of the car.
>
> JUDGE: Okay.
>
> COMMONWEALTH: Yes, and they were on the reports as well.[12]

The trial court then announced its decision to enter the order, promising the parties additional time, if needed, to consult their own experts or conduct their own testing.

> JUDGE: I'm gonna sign the order.
>
> COMMONWEALTH: Thank you.
>
> JUDGE: And if you can get them that information as soon as possible, or if when you know that the testing is gonna be done. I know that they generally don't let you all know ahead of time, but if you have any time frame – that way they can be prepared with whatever information that it is that they need.

---

[11] VR 10/17/23 at 10:24:36 to 10:25:41.

[12] VR 10/17/23 at 10:25:42 to 10:25:54.

And if something changes with regards to that, or there needs to be another expert or something to that effect, the court will deal with that at that point in time. Because I do know and understand what issues arise when that happens. And you all do have a right to defend that, look into it, have your experts review it if necessary.[13]

After other matters were addressed, the trial judge concluded the hearing: "However, if something comes up with the DNA discovery or there's another hiccup or another issue – which I doubt there will be – but if there is one, then I will modify [Knox's] bond if we don't go on the thirteenth."[14]

The order tendered by the Commonwealth to allow consumption of the DNA samples from the Taco Bell straws stated that "the testing of evidence is necessary in order to continue the investigation referenced in this case."[15] The court entered several other orders that day, many related to the future exchange of discovery between the parties, and none of which set forth a specific deadline.[16]

The following day, the Commonwealth sent 16 items to the lab for DNA testing, including the two Taco Bell straws. The lab returned a seven-page

---

[13] VR 10/17/23 at 10:26:08 to 10:27:05.

[14] VR 10/17/23 at 10:38:46 to 10:39:04.

[15] TR for Bowen, p. 101; TR for Knox, p. 112.

[16] TR for Knox, p. 132 (an order directing the Commonwealth to disclose any expert witnesses and their opinions), p. 138 (an order directing the Commonwealth to disclose "prior to the start of trial" any inconsistent witness statements made by the Commonwealth's witnesses), and p. 141 (an order directing the Commonwealth to "immediately" disclose any exculpatory statements relating to Knox).

report detailing the results, and there is no dispute that the Commonwealth promptly provided a copy of the report to Bowen and Knox on November 2, 2023. In addition, the Commonwealth filed another supplemental response to its initial discovery disclosures.[17]  On November 9, 2023, the parties reconvened before the court.  Bowen had motions *in limine* that were still pending from the October 17, 2023 pretrial conference.  Knox had filed a new motion "To Continue Trial and Release Mr. Knox to [Home Incarceration]; or in the Alternative, Exclude All Recent Discovery."[18]  Knox's motion specifically addressed the DNA report and restated the same arguments he made through counsel on October 17, 2023. Again, we will set forth the relevant portions of the hearing that relate to the DNA test results as they are pertinent to our analysis.

> JUDGE (to Knox):  Okay, so your motion to continue is as it relates to the DNA evidence that was sent off?
>
> . . .
>
> COUNSEL FOR KNOX:  I picked a trial date thinking that we were ready to go, and I really wasn't too concerned about anything else other than the Taco Bell cups, that was the big discussion.  But, you know, here we come.
>
> . . .

---

[17] TR for Bowen, p. 107; TR for Knox, p. 142.

[18] TR for Knox, p. 147.

The DNA, Judge, there's . . . I don't even know what to take from it. As you see, the report – it's seven pages long. There's more in that report and more stuff sent off in the prior 20 months before.

And my guy's DNA's on there in some parts. Mr. Bowen's DNA's on there in some parts. There's mention of some other person – I don't even know who this guy is, and I don't know why that was sent off. And there's potential Mr. Valdez[19] was on some of this car – can't be excluded as a contributor. And I'm not a DNA expert, but I've been trying to rush through and interpret this.

I wasn't even concerned about this car and (inaudible). I guess I never even gave it a second thought and, you know, I thought: "Well, if there's Taco Bell stuff, okay. That's two pieces. We'll deal with it." But that's not what it's limited to.

We got the statement. We got this . . . I mean, it's a very . . . it's a well-written DNA report, Judge. It's not just that, you know, KSP found a one-in-a-trillion fingerprint. It's . . . It's . . . It's detailed.

. . .

We didn't know that 15 other pieces of DNA were being sent off.[20]

Though Bowen had filed no written motion relating to the DNA results, he verbally joined in the motion made by Knox.

COUNSEL FOR BOWEN: So, I'm joining in [Counsel for Knox's] motion as far as (inaudible) to exclude the DNA report. It is more than what we expected because

---

[19] It is assumed counsel is referring to the victim, Nathanael Velez.

[20] VR 11/9/23 at 3:21:30 to 3:26:20.

-11-

the order that was sent into the court was two Taco Bell straws. And it ends up coming back they tested the inside and outside of all four doors of this Ford Explorer. The gear shift, the steering wheel – they tested all of these things.

We got the report on these things, and I wasn't on any of the previous DNA reports, but I'm on this one. And I need to familiarize myself with it. We got it, maybe, on the second.

I haven't had an opportunity to call the lab to try to talk to anybody, to try to do anything, or investigate what that stuff is. So, I'm asking, because of the timing, when this case has existed for almost two years. They just sent it off, I think, the day that we – the court signed that order. It could have been done two years ago. And now I'm in the position of battling uphill on something I'm not familiar with. So, I'm asking for it to be excluded for that reason. And I can go forward without – I can go forward if that is excluded. If not, I'm in a position where I have to (inaudible) on something that I don't know about. So, if the court excludes it, that takes care of the –

JUDGE: Okay. So let's talk about this DNA. I recall the last time that we were here there were two Taco Bell cups.

. . .

COMMONWEALTH: The rest of it didn't need a court order.

. . .

COUNSEL FOR KNOX: I thought, and maybe we could watch the video, [counsel for Bowen] was under the exact same impression that I was which was ok, we're sending these straws off.

-12-

. . .

It's a very good report in terms of the scientific quality and how it's written, but the substance, I don't even know what some of that means.

. . .

There's swabs from other things, handrails, and stuff on the sidewalk, which I wondered why they didn't test a long time ago, but I thought, well I guess they're not going to send that off. Well, whatever, I'm not going to even consider it.

. . .

JUDGE: I'm inclined to exclude it. Just because we were all ready to go forward and prepared without it. I believe that was the Commonwealth's stance as well.

. . .

COMMONWEALTH: Judge, we would object to the exclusion. I don't want a continuance, but I think the proper remedy is a continuance.

JUDGE: I just said inclined. I haven't made a decision. I just said inclined.[21]

In concluding the hearing, the trial court made it clear to the parties that, whatever the ruling, there would not be a continuance beyond a "couple of days."[22]

---

[21] VR 11/9/23 at 3:28:44 to 3:39:19.

[22] VR 11/9/23 at 3:39:47 to 3:45:46.

Trial was scheduled to begin November 13, 2023. The parties were informed of the ruling of the trial court on that morning. Pertaining to the DNA lab report, the order stated:

> [W]ith regard to the DNA lab results sent to the lab on October 18, 2023, with the exception of the Taco Bell straws that were requested to be tested in open Court on October 17, 2023, are hereby EXCLUDED. RCr 7.24(4) states that it is not a defense against untimely disclosure of evidence under this rule that the party failing to provide timely disclosure only recently formed the intent to introduce such evidence unless it can be demonstrated, by clear and convincing evidence, that (1) it could not, in a timely fashion, have reasonably foreseen a need to introduce the evidence and (2) that such untimely disclosure will not unfairly prejudice the opposing party.
>
> This case was set for trial on two prior dates with objection from the Commonwealth on both occasions stating they were ready and prepared for trial. At the last trial[,] Mr. Bowen motioned for a Continuance due to the voluminous amount of Discovery. The Court granted the continuance to allow counsel to review all the Discovery and to have the opportunity to go over said Discovery with Mr. Bowen. The Court will note for the record that counsel for Mr. Knox also objected and requested a bond modification which was denied, and the Court gave a new trial date of November 13, 2023. In no way was this decision meant to imply that Discovery was still open and ongoing nor [w]as this [an] open invitation to to [sic] expand Discovery.

November 13, 2023 Order.

Following receipt of the order, the Commonwealth argued in open court that a continuance was the appropriate remedy for "late turned over

-14-

evidence,"[23] while Bowen argued briefly that the DNA test results for the Taco Bell straws should be excluded as well, or that Defendants should be given a continuance to study the report.[24] Both oral motions were denied[25] and the case proceeded to trial. However, the Commonwealth immediately pursued this interlocutory appeal, and this Court stayed the proceedings below before a jury was sworn.

## STANDARD OF REVIEW

It is an "unassailable contention" that a trial court generally has broad discretion under the rules of discovery to impose an appropriate sanction for a violation. *Jones v. Commonwealth*, 237 S.W.3d 153, 157 (Ky. 2007). One possible sanction is the exclusion of the undisclosed evidence. RCr 7.24(11). The decision of a trial court to admit or exclude evidence is reviewed under an abuse of discretion standard. *Porter v. Allen*, 611 S.W.3d 290, 294 (Ky. App. 2020) (citing *Clephas v. Garlock, Inc.*, 168 S.W.3d 389, 393 (Ky. App. 2004)). "The test is not whether an appellate court would have decided the matter differently, but whether the trial court's rulings were clearly erroneous or constituted an abuse of discretion." *Id.* at 294 (citing *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982)).

---

[23] VR 11/13/23 at 11:26:15 to 11:26:58.

[24] VR 11/13/23 at 11:29:15 to 11:30:40.

[25] VR 11/13/23 at 11:30:42 to 11:30:44.

An abuse of discretion exists if the ruling of the trial court was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Porter*, 611 S.W.3d at 294 (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)). However, "no party [can] be sanctioned for committing a nonexistent discovery violation." *Jones*, 237 S.W.3d at 157. And the trial court's "interpretation of constitutional provisions, statutes, court rules and procedures requires *de novo* review without deference to the trial court's view." *Commonwealth v. Cambron*, 546 S.W.3d 556, 560 (Ky. App. 2018) (citing *Commonwealth v. Nichols*, 280 S.W.3d 39, 42 (Ky. 2009)).

Bowen seeks to limit this Court's review to palpable error, by claiming the Commonwealth failed to make an argument on timeliness before the trial court and, therefore, failed to preserve the issue. Bowen claims the Commonwealth admitted to the violation when, on the morning of trial and after receiving the order of exclusion from the trial court, the Commonwealth referred the court to case law relating to what the Commonwealth called "late turned over evidence" in an attempt to convince the court to alter its ruling. However, the Commonwealth had not been accused of violating the rules of discovery prior to the November 13, 2023 Order, thus, there was no reason for the Commonwealth to have previously argued the issue of timeliness under RCr 7.24. Furthermore, referring to "late turned over evidence" does not equate with an admission of

wrongdoing.  Therefore, we disagree with Bowen and find the Commonwealth has properly preserved for review the question of whether a discovery violation was committed.

ANALYSIS

The Commonwealth did not need the trial court's permission to seek DNA testing of evidence already in the possession of the Commonwealth. However, because the DNA samples collected from the mouths of the Taco Bell straws were so small, on October 17, 2023, the Commonwealth did seek the trial court's order to conduct testing that might consume the entirety of those samples. Consumption of the straws would prevent Bowen and Knox from conducting independent testing on those samples, but not any of the other items.  Though they were not required to disclose their plans to test additional evidence, the Commonwealth freely admitted their intention to do so and explained why.  Only Bowen made a brief argument against entry of the consumption order; rather Defendants' arguments sought to convince the trial court to shut the door on any DNA testing because "that could change everything."[26]  After listening to Bowen and Knox's objections to the testing, the trial court nevertheless entered the consumption order.  The wording of the order itself indicated DNA testing was

_____

[26] VR 10/17/23 at 10:22:50.

"necessary to continue the [Commonwealth's] investigation."[27] Announcing the decision to enter the consumption order, the trial court reminded the parties that the Commonwealth had previously rearranged their schedule to accommodate the continuance requested by Bowen, that DNA testing could prove to be exculpatory, that the DNA results should be returned before trial, and, that the trial court would "understand" if Knox or Bowen needed additional time to "have [their] experts review [the report]."[28]

Nevertheless, when the DNA results were returned, the court denied Defendants' motions for a continuance on November 9, 2023, choosing instead to exclude portions of the Commonwealth's DNA report. The trial court was not swayed by Bowen's and Knox's claims of undue prejudice when the DNA testing was discussed on October 17, 2023, and all parties were present when the Commonwealth explained multiple items, *including blood samples*, were being sent in for testing with the straws. However, in the November 13, 2023 exclusion order, the trial court accused the Commonwealth of abusing the continuance and prejudicing the Defendants by obtaining DNA testing of more than just the two Taco Bell straws. After receiving the exclusion order the morning of trial, Bowen also requested a continuance unless the trial court amended its order to exclude the

_____

[27] TR for Bowen, p. 101; TR for Knox, p. 112.

[28] VR 10/17/23 10:26:45 to 10:27:02.

entire DNA report, including the results from the two straws. That motion was denied as well.

In its order excluding the majority of the DNA report, the trial court cited RCr 7.24(4) which refers to the "untimely disclosure" of evidence a party has "only recently formed the intent to introduce." The Commonwealth makes three arguments to support their assertion of timeliness: (1) there was no cutoff discovery date imposed by the court or the procedural rules; (2) the Commonwealth complied with its continuing obligation to provide newly discovered evidence by disclosing the DNA report in a timely manner in accordance with RCr 7.24(10); and (3) the trial court's order acknowledged that the Commonwealth's discovery disclosures of November 2, 2023, were appropriate.

The Order of Arraignment and Discovery entered on May 2, 2022, only states: "Within the time frames outlined in the Rules of Practice of the Jefferson Circuit Court, counsel shall comply with the [R]ules of Criminal Procedure regarding discovery." Under the Kentucky Rules of Criminal Procedure discovery is controlled by RCr 7.24 which provides, in relevant part, to our consideration:

> (1) Upon written request by the defense, the attorney for the Commonwealth shall disclose . . . (b) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection

-19-

with the particular case, or copies thereof, that are known by the attorney for the Commonwealth to be in the possession, custody or control of the Commonwealth . . .

. . .

(4) It is not a defense against untimely disclosure of evidence under this rule that the party failing to provide timely disclosure only recently formed the intent to introduce such evidence unless it can be demonstrated, by clear and convincing evidence, that (1): it could not, in a timely fashion, have reasonably foreseen a need to introduce the evidence and (2) that such untimely disclosure will not unfairly prejudice the opposing party.

. . .

(6) If the case has been set for trial, a request for relief [under] this rule shall be made a reasonable time in advance of the trial date, and the granting of a continuance by reason of such request shall lie within the sound discretion of the court.

. . .

(10) If subsequent to compliance with an order issued pursuant to this rule, and prior to or during trial, a party discovers additional material previously requested which is subject to discovery or inspection under the rule, that party shall promptly notify the other party or the other party's attorney, or the court, of the existence thereof.

(11) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may direct such party to permit the discovery or inspection of materials not

-20-

> previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as may be just under the circumstances.

RCr 7.24. While the trial court refers only to RCr 7.24 in the exclusion order, Bowen points to the local rules of the Jefferson County circuit court, specifically JRP[29] 803(A) which states in relevant part:

> A. The Commonwealth may provide discovery to the Defendant on the day of arraignment, but shall provide no later than ten (10) days prior to the first pretrial conference, the following:
>
> . . .
>
> > 2. Results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with this case, or copies thereof, that are known by the attorney for the Commonwealth to be in possession, custody or control of the Commonwealth or its agents . . . .

JRP 803(A)(2). JRP 803(A)(2) almost perfectly mirrors RCr 7.24(1)(b). However, JRP 803(A) differs significantly from the state rule by eliminating the requirement of a written request for discovery from a defendant and placing upon the Commonwealth an initial discovery deadline of 10 days before the first pretrial conference. Bowen argues that JRP 803(A) required the Commonwealth to produce any scientific report, which would include DNA test results no later than

---

[29] Rules of Practice and Procedure of the 30th Judicial Circuit, Jefferson Circuit Court.

May 17, 2022, which was 10 days before the first pretrial conference in this case. The Commonwealth did not produce its first discovery report until June 13, 2022. Bowen did not object to its supposed untimeliness at the time.

The Court notes RCr 7.24(1)(b) *and* JRP 803(A)(2) both refer only to the disclosure of discoverable items "in the possession, custody or control" of the Commonwealth or its agents. Considering the Commonwealth's plan to seek DNA testing was extensively discussed during the October 17, 2023 pretrial conference, there is no dispute that the DNA report disclosed on November 2, 2023, was not in the possession of the Commonwealth 10 days before the first pretrial conference. Furthermore, there is no dispute that the Commonwealth's first discovery report included a list of all evidence and samples collected from the crime scene as well as photos which showed the two Taco Bell cups. The comments during the hearings on October 17, 2023, and November 9, 2023, also show Bowen and Knox were aware of the running vehicle found at the scene, that the cups and numerous samples were taken from that vehicle, and that they could seek DNA testing of the samples themselves. Instead, Defendants' strategy was to wait and see what the Commonwealth would do. That was a choice. Defendants' choice does not preclude the Commonwealth from later seeking DNA testing of those same items.

The Commonwealth supplemented their initial discovery disclosures on more than one occasion, each time concluding with the statement: "Any

discoverable materials which come into the possession of the Commonwealth after filing of this response will be immediately forwarded to defense counsel."[30]  Not only is supplemental discovery allowed pursuant to RCr 7.24(10), it is allowed under JRP 803(G) which mirrors the state rule:  "If, subsequent to the discovery deadline and prior to, or during trial, any party discovers additional material previously requested which is subject to discovery or inspection, counsel shall promptly notify the other party or attorney, or the Court, of its existence."  JRP 803(G).  Indeed, the trial court's order of exclusion plainly states the Commonwealth was complying with the rules of discovery.[31]

It is possible to be both compliant with an ongoing obligation to provide discovery and noncompliant with a discovery deadline.  However, as stated before, the only discovery deadline in this case is found in JRP 803(A).  JRP 803(A), especially taken in context with the history of this case, was not meant to shut the door on discovery, nor could it do so in contradiction to RCr 7.24.  "[N]o local rule shall contradict any substantive rule of law or any rule of practice and procedure promulgated by this Court . . . ."  *Abernathy v. Nicholson*, 899 S.W.2d 85, 87 (Ky. 1995).  Furthermore, the day the court entered the consumption order,

---

[30] *Commonwealth v. Bowen*, No. 22-CR-000824-001, at p. 70, 76, 101; and *Commonwealth v. Knox*, No. 22-CR-000824-002, at p. 72, 93, 100, 142.

[31] "The Commonwealth was complying with [RCr 7.24(10)] upon the filing of subsequent discovery on November 2, 2023."  (November 13, 2023 Order.)

three other orders were entered at the request of Knox, directing the Commonwealth to turn over evidence. One of those orders was silent as to when the exchange should occur, one directed the Commonwealth to turn over evidence "immediately," and the third ordered that the evidence be exchanged "prior to trial."[32] There was clearly an expectation that discovery was ongoing.

When looking at evidence turned over in close proximity to trial, it is important for the trial court to consider not just the letter, but the spirit, of the rules of discovery. *See Commonwealth v. Nichols*, 280 S.W.3d 39, 43 (Ky. 2009). A trial court may conclude a party adhered to the letter of the RCr 7.24, but still determine that party acted in bad faith. *See id*. While clearly frustrated with the decision of the Commonwealth to seek DNA testing nearly two years after the evidence was collected, neither the trial court nor Defendants accuse the Commonwealth of bad faith, sandbagging, gamesmanship, "play[ing] a cat and mouse game[,]" or "engaging in improper dilatory tactics during the discovery process." *Jones*, 237 S.W.3d at 156-57.

The Commonwealth was forthcoming about the new detective finding evidence in the case file that he believed his predecessor should have tested. The

---

[32] TR for Knox, p. 132 (an order directing the Commonwealth to disclose any expert witnesses and their opinions), p. 138 (an order directing the Commonwealth to disclose "prior to the start of trial" any inconsistent witness statements made by the Commonwealth's witnesses), and p. 141 (an order directing the Commonwealth to "immediately" disclose any exculpatory statements relating to Knox).

Commonwealth did not conceal the fact that multiple items were being sent off for DNA testing in addition to the Taco Bell straws. As the Commonwealth clearly stated on the record October 17, 2023:

> Now that there is a continuance, [Detective Beckham] wants to send items off. The lab has told him that, of the items he wants to send, the blood swabs are fine. There's enough blood that they won't be totally consumed. But the straws. There were two cups found in a running vehicle at the scene. Each of those cups had a straw. To swab the straw and test the swab may consume all the DNA because the mouth of the straw is such a small area. So, they need – they require a consumption order.[33]

The record is also clear that defense counsel did not recall this when the parties returned to court on November 9, 2023, to discuss the DNA results. As Knox argued: "We could go back and watch the video, but [counsel for Bowen] and I both thought it was a few straws."[34] We do not believe defense counsel was acting in bad faith or attempting to mislead the trial court; nor do we believe the Commonwealth should be sanctioned for defense counsel's imperfect recall.

The November 13, 2023 decision of the trial court also appears to be based on this imperfect recall. The DNA test results pertaining to the Taco Bell straws were not excluded, presumably because the exclusion order stated "they were requested to be tested in open [c]ourt on October 17, 2023[,]" but the testing

---

[33] VR 10/17/23 at 10:21:07 to 10:21:43.

[34] VR 11/9/23 at 3:33:00 to 3:33:08.

results on the other items were excluded with the trial court stating "[i]n no way was [the continuance of the October 17, 2023 trial date] meant to imply that Discovery was still open and ongoing nor [w]as this [an] open invitation [to] expand Discovery." November 13, 2023 Order.

A review of the October 17, 2023 hearing shows the trial court clearly erred in its recollection of events. The Commonwealth *did disclose* that multiple items would be tested for DNA. The Commonwealth *did not* ask the trial court for permission to test the straws for DNA, but for permission for DNA testing to consume the entire sample taken from the straws. The Commonwealth *did inform* the trial court that testing would occur during the continuance and that the test results would be back before the November 13, 2023 trial date. And the trial court *did acknowledge* there might be a need to continue the November trial date to allow Defendants to consult DNA experts. Therefore, this is not an example of a trial court using its discretion to sanction a discovery violation. The record does not support the finding of the trial court that a violation occurred at all.

Justifying the decision to sign the consumption order over the objections of Defendants – who were objecting not to the consumption of the DNA from the straws but to the DNA testing itself, the trial court explained: "And the information could be exculpatory. I don't know."[35] We still do not know. The

---

[35] VR 10/17/23 at 10:24:30.

DNA report, while viewed by the trial court, was not made part of the record. Comments from the trial court and defense counsel during the November 9, 2023, hearing indicate many of the test results were inconclusive, that some samples contained DNA that was not from either Bowen or Knox, and there were statements in the report which counsel did not understand. As Knox's counsel plainly admitted, "I'm not a DNA expert."[36] Though Bowen argues that the order of exclusion was proper, both Defendants alternatively sought a continuance from the trial court in order to investigate the DNA results.[37] Their motions were denied. The trial court has an understandable desire to move cases towards resolution. However, excluding the DNA report in part while admitting the testing of the two straws forces Defendants to go to trial despite their requests for continuance to examine the DNA report in greater detail. This denies Defendants the possibility of uncovering any exculpatory evidence in the report.

"[I]n criminal cases, sensitivity to the dominant rule of due process and all which that affords a criminal defendant must always be close at hand." *Nichols*, 280 S.W.3d at 45. "[T]he historically-appropriate remedy when faced with surprise evidence is for the defense to ask for a continuance." *Dixon v.*

---

[36] VR 11/9/23 at 3:23:28 to 3:23:29.

[37] Knox made his motion in writing and was heard on November 9, 2023. Bowen made his motion verbally prior to the start of trial on November 13, 2023.

*Commonwealth*, 519 S.W.3d 396, 400 (Ky. App. 2017). Exclusion of proffered evidence is a sanction under RCr 7.24(11). We understand the trial court was required to make a decision quickly on the Defendants' motions, and both the trial court and Defendants were going off imperfect memory. However, the trial court's finding of a discovery violation was clear error as "it was clearly contrary to the weight of [the] evidence." *Clark v. Clark*, 782 S.W.2d 56, 58 (Ky. App. 1990). We find the imposition of a sanction in this case where the record does not support the finding of a discovery violation in either the letter or the spirit of the law was an abuse of discretion by the trial court.

For the foregoing reasons, we reverse the portion of the November 13, 2023 Order of the Jefferson Circuit Court excluding the results of DNA testing on items other than the two Taco Bell straws, and remand for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

Chase M. Cunningham
Special Assistant Attorney General
Louisville, Kentucky

BRIEF FOR APPELLEE:

Joshua M. Reho
Louisville, Kentucky